**SMITH et al. v. CHASE NAT. BANK OF CITY OF NEW YORK et al. (four cases).**

Nos. 10538, 10627, 10539, 10628.

Circuit Court of Appeals, Eighth Circuit.

July 9, 1936.

R. R. Brewster, of Kansas City, Mo. (C. A. Randolph, R. T. Brewster, and J. Robertson Clagett, all of Kansas City, Mo., on the brief), for appellants.

Herman M. Langworthy and Jesse Andrews, both of Kansas City, Mo. (Elliott H. Jones, Carl D. Matz, Scarritt, Jones & North, and Langworthy, Spencer, Terrell & Matz, all of Kansas City, Mo., on the brief), for appellee Herbert V. Jones.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

These appeals are from .orders dismissing appellants' "amended and supplemental ancillary and dependent petitions in equity," one of which was filed in the Matter of Fox Midland Theatre Company, bankrupt, a bankruptcy proceeding pending in the United States District Court for the Western District of Missouri, and the other in the Matter of Fox Rocky Mountain Theatre Company, bankrupt, a similar proceeding in the same court. The petitions are identical, and their prayers are for orders vacating the adjudications in bankruptcy, and for other relief.

The two theater companies filed their voluntary petitions in bankruptcy on March 8, 1933, and were adjudicated bankrupts on that day. At the time the bankruptcy petitions were filed, the companies were engaged in the business of owning, leasing, managing, and operating motion picture theaters in various states, and in holding the stock of other companies engaged in like business. Herbert V. Jones was first appointed receiver in bankruptcy of each bankrupt, and thereafter trustee in bankruptcy of each, and was authorized to continue their business. Frequent applications to the court for instructions and orders relating to the conduct of the business were made by him, and he was several times authorized to borrow necessary funds and to issue trustee's certificates therefor. On December 10, 1934, appraisers were duly appointed by the referee, and on April 5, 1935, their reports were filed, containing their estimates of the value of the assets of the bankrupts. In the proceeding affecting the Fox Midland Company, a substantial controversy arose with Herbert M. Woolf and M. B. Shanberg, who petitioned the court ·to vacate the adjudication in bankruptcy of that company. See Woolf et al. v. Reeves et al. (C.C.A.8) 65 F.(2d) 80. That controversy was compromised, and, in that connection, the Chase National Bank of the City of New York joined with Woolf, Shanberg, and others in a petition to set aside the order referring the controversy to the referee in bankruptcy. During the course of the administration of these estates in bankruptcy, a large number of claims were filed; a total of $9,303,000 against the Fox Rocky Mountain Company, of which $4,505,156.83 were allowed, and $5,397;591.17 against the Midland, of which $3,120,435.28 were allowed.

On April 12, 1935, the administration of both estates had proceeded to such a stage as to justify a sale of the assets. At or about that date, the National Theatres Corporation submitted to the trustee offers for the purchase of the assets of each of the bankrupts, which offers were submitted to the bankruptcy court by petitions. The referee thereupon called meetings of creditors for April 23, 1935, to consider the petitions of the trustee for orders authorizing him to sell the assets of each of the bankrupt estates at private sale, pursuant to the terms of the offers made by the National Theatres Corporation. On the day before that on which the meetings of creditors were to be held, Jacob Smith, Lee H. Hamlin, and William Snower, three of the appellants, presented to the District Judge their "ancillary and dependent petition in

equity," entitled in both proceedings, and procured from him an order staying all proceedings in the two bankruptcies until the further order of the court. Thereupon the trustee filed his petition in each of the proceedings, praying the vacation of the injunctional order, and the court, after notice and a hearing, vacated the stay. The creditors' meetings, which had been adjourned from April 23d, were held on April 26, 1935. The petitions of the trustee for leave to sell the assets of the bankrupts at private sale were thereafter heard, and an order was made and entered in each proceeding, directing the consummation of the sales of the assets to the National Theatres Corporation in accordance with its offers. The only objectors to the granting of the trustee's petitions for leave to sell were Lee H. Hamlin, as a creditor and holder of two claims (one against the Midland for $21.84, which he had purchased for about 25 cents on the dollar, and one against the Rocky Mountain for $1,625.80, which he had acquired for $325.16), and Lee H. Hamlin, William Snower, and Jacob Smith, as bondholders of General Theatres Equipment, Inc., claiming liens upon the assets by reason of the matters asserted in their "ancillary and dependent petition in equity." As directed by the referee, the assets of each estate were sold on May 4, 1935, and the trustee conveyed them to National Theatres Corporation. The purchase price was then paid by that corporation, in accordance with its offers. The purchaser did not pay cash, since it owned the claims against the bankrupts and in effect used the claims to purchase the assets, agreeing to pay, in addition, all unpaid expenses of administration.

Lee H. Hamlin then petitioned for a review of the referee's orders of sale. Smith and Snower did not. The petitions for review were heard on May 13, 1935. While the purchaser, National Theatres Corporation, denied the merits of the petitions to review, it tendered to Hamlin the full amounts of his claims, and paid them into the court. Thereupon, the judge dismissed the petitions for review. On the same day, he made an order that the "ancillary and dependent petition in equity" of appellants Smith, Hamlin, and Snower should stand dismissed on May 23, 1935, unless they filed an amended petition prior to that date. Thereafter, they, together with appellants Jones, Kupper, and Mosher, who joined with them as plaintiffs by leave of court, filed their "amended and supplemental ancillary and dependent petitions in equity." The trustee in bankruptcy filed motions to dismiss, which motions were granted, and thereupon these appeals were taken, one of which was allowed by the District Court in each proceeding, and one by this court in each.

The facts stated by the appellants in their amended petitions are, in substance, as follows:

That the petitioners are the owners of debenture bonds of General Theatres Equipment, Inc. (hereinafter called General Theatres), in the face amount of $100,000. That these bonds are part of a $30,000,000 bond issue dated April 1, 1930, and sponsored and promoted by the Chase National Bank and its subsidiary, Chase Securities Corporation, for the purpose of obtaining funds for the purchase of a controlling interest in Fox Film Corporation (hereinafter called Fox Film). That the entire assets of General Theatres, which was a holding company, consisted of stocks in other corporations. That the Chase National Bank was trustee under the trust indenture pursuant to which the bonds owned by the petitioners were issued. That this indenture provided that the assets of General Theatres stand as security for the holders of its debenture bonds and for the payment of the principal and interest thereof, and contained this provision:

"Section 12. The Corporation (General Theatres Equipment, Inc.) will not, so long as any of the debentures remain outstanding,

* * *

"(c) create or suffer to be created or to exist any pledge, mortgage or other lien of or upon any of the shares of stock of subsidiaries or other assets owned by the corporation, without making effective provision in and by the instrument creating such pledge, mortgage or other lien whereby all of the debentures issued hereunder shall be directly secured thereby at least equally and ratably with the bonds, notes or other obligations issued under or secured by such pledge, mortgage, or other lien. * * *"

That the Chase National Bank, in order to support the market for said bonds artificially and to prevent loss to itself, required General Theatres to go into the market and buy its own securities, and, for that purpose, the bank loaned it money. That to secure its loans, the bank, in viola-

tion of the provisions of the trust indenture, required General Theatres to pledge to it 1,221,213 class A shares of Fox Film, a majority of the stock of that corporation and the principal and most valuable asset of General Theatres and the chief security of its bondholders. That the Chase National Bank foreclosed the pledge, and took over the control of Fox Film and its subsidiaries, and proceeded to appropriate their assets to its own use. That foreclosure of the pledge caused General Theatres to default on its bonds, and the bank procured the appointment of a friendly receiver for it (General Theatres) by a state court of Delaware. That the bank also caused a bondholders' protective committee to be formed, composed of the directors and nominees and agents of the bank. That the bank then reorganized the Fox Film Corporation and reduced its capital stock to one share for every six previously held, and issued 2,000,000 new shares to itself in lieu of claims that it had against Fox Film. That Fox Film owned all of the stock of Wesco, a holding company owning the stock of numerous subsidiaries operating theater chains throughout the United States, among which were Fox Rocky Mountain Theatre Company and Fox Midland Theatre Company, the bankrupts. That the bankrupts were wholly solvent, but the bank, in order to divert their valuable properties which were the real security for the bondholders of General Theatres and to acquire them for itself, caused the Midland and the Rocky Mountain, which were paper corporations and a part of Fox Film, to file voluntary petitions in bankruptcy. The appearance of insolvency of the bankrupts was created by making it appear that they owed to the bank and to the subsidiaries of the bankrupts false and fictitious debts, and by undervaluing the assets of the bankrupts. That the bank then caused to be organized National Theatres Corporation (herein called National Theatres), 58 per cent. of the stock of which it owned outright, and 42 per cent. of the stock of which it controlled through Fox Film. That National Theatres then proceeded to buy up the valid claims against the bankrupts at a small fraction of the face of the claims, misrepresenting the value of the bankrupt estates, and, under an arrangement with the trustee in bankruptcy, to buy up all of the bona fide "common claims" which it had otherwise been unable to purchase. That just prior to the time when the bankrupts filed their voluntary petitions, the bank caused them to transfer all of their valuable theater properties to wholly-owned subsidiaries for the purported purpose of facilitating the administration of the estates in bankruptcy. That the appraisers appointed by the referee in bankruptcy appraised the property of the bankrupts at less than $2,000,000, but that they did not view the theater properties transferred to the subsidiaries, and merely appraised the stock as its value appeared from book entries. That, upon information and belief, the real value of the bankrupt estates is in excess of $20,000,000. That the properties of the bankrupts were not offered at public sale. That National Theatres offered to purchase the estates for $790,000 each and to pay certain administration expenses. That at the times these offers were made, and in accordance with them, the trustee in bankruptcy agreed with National Theatres that he would not accept any other bids, and would not present any other offers to the court, and would use his influence to have the bids accepted. That National Theatres, at the time of the sale of the properties of the bankrupts to it, owned virtually all of the claims that had been filed against the bankrupt estates, except certain fictitious claims which, after they had served the purpose of the Chase National Bank, were expunged; and that appellants and appellees are the only parties now interested in the bankruptcy proceedings. That National Theatres was "the bank's practically owned and controlled subsidiary." That the bank and the other appellees have, from the inception of the bankruptcy proceedings, conspired together, schemed, and designed to appropriate and divert to the bank the physical property and assets of the bankrupts, to the total exclusion of the bondholders of General Theatres, and to those ends have misused the bankruptcy laws of the United States and the processes of the court, and all that they have done has been done in furtherance of such scheme and conspiracy.

The appellants in their petitions further assert that the bank and its owned and controlled subsidiary, National Theatres, will be deemed in equity to have purchased the assets of the bankrupts for the use and benefit of the bondholders of General Theatres, and to be constructive trustees of such assets; and that the bondholders are entitled in equity to have a lien impressed upon the property of the bankrupts

to satisfy their bonds, and to have the bank and National Theatres account for any profits made by them in purchasing claims against the bankrupt estates. Appellants' petitions also contain the assertion that they have no adequate remedy at law, and will suffer great and irreparable injury unless the court of bankruptcy grants them relief, and that they have only recently learned the facts forming the basis of their petitions. The prayer for relief in each petition is as follows:

"Wherefore, complainants, for themselves, and all others similarly situated who may desire to join and intervene herein, pray the Court to grant them the following relief, to-wit:

"(a) That the Court make an order staying all proceedings in said bankruptcy proceedings, excepting orders necessary for the preservation and protection of the assets, until a full and complete hearing can be had upon the petition herein, and that defendants be restrained from transferring any of said assets;

"(b) That the adjudications in bankruptcy of the Fox Rocky Mountain Theatre Company and Fox Midland Theatre Company be vacated and set aside and their assets be restored to them;

"(c) That the sales of the assets of Fox Rocky Mountain Theatre Company and Fox Midland Theatre Company to National Theatres Corporation be vacated and set aside;

"(d) That the allowance of claims against the Fox Rocky Mountain Theatre Company and Fox Midland Theatre Company in favor of defendants be re-examined and disallowed;

"(e) That the assets of Fox Rocky Mountain Theatre Company and Fox Midland Theatre Company be re-appraised and the actual value thereof determined;

"(f) That the transfer of assets of the Fox Rocky Mountain Theatre Company and of the Fox Midland Theatre Company to their said subsidiaries be declared void and that the assets transferred be returned to said companies;

"(g) That the Court declare that the assets of the Fox Rocky Mountain Theatre Company and Fox Midland Theatre Company constitute trust property and a trust fund for the benefit of the bondholders of General Theatres Equipment, Inc.;

"(h) That the Court declare and impress a lien upon the assets of Fox Rocky Mountain Theatre Company and Fox Midland Theatre Company in favor of complainants in the amount of the value of their bonds;

"(i) That an accounting be had and The Chase National Bank, Fox Film Corporation, National Theatres Corporation, and their subsidiaries and adjuncts be ordered to account to complainants as to the assets of General Theatres Equipment, Inc., and its subsidiaries, including Fox Rocky Mountain Theatre Company and Fox Midland Theatre Company, wrongfully diverted to their own use;

"(j) That The Chase National Bank and National Theatres Corporation be ordered to account to complainants for all profits made by them as trustees ex maleficio in purchasing claims against Fox Rocky Mountain Theatre Company and Fox Midland Theatre Company;

"(k) That the value of complainants' bonds be determined and defendants, or some of them, as a hearing may determine, be ordered to pay to complainants the value thereof;

"(l) That the Court decree such other and further relief as to the Court may seem just and equitable."

Reduced to its lowest terms, the question we must decide is whether the court below was required to entertain jurisdiction of the appellants' petitions. If the court had no jurisdiction or if it was not required to exercise jurisdiction, it is clear that the orders appealed from should be affirmed.

The appellants contend that the facts alleged in the petitions entitle them to an equitable lien upon the assets of the bankrupts, and also entitle them to an order vacating the adjudications in bankruptcy, and that the court of bankruptcy has exclusive jurisdiction of the subject-matter. They point out that when the court acquired jurisdiction of the assets of the bankrupts, it had the power to determine controversies in relation to their disposition and to the extent and character of liens thereon or rights therein; citing Whitney v. Wenman, 198 U.S. 539, 25 S.Ct. 778, 49 L.Ed. 1157; Nisbet et al. v. Federal Title & Trust Co. (C.C.A.8) 229 F. 644, 647; In re Hoey et al. (C.C.A.2) 290 F. 116, 119; Central Republic Bank & Trust Co. et al. v. Caldwell et al. (C.C.A.8) 58 F.(2d) 721, 731; Howe & Rogers Co. v. Crittenden et al. (C.C.A. 2) 76 F.(2d) 749; Hoffman v. McClelland, 264 U.S. 552, 558, 44 S.Ct. 407, 68 L.Ed.

845. The appellants also contend that the court, even upon application of persons not parties to the bankruptcy proceedings, has the power to vacate an adjudication in bankruptcy in order to protect itself from being used in connection with the perpetration of a fraud; citing Zeitinger et al. v. Hargadine-McKittrick Dry Goods Co. (C.C.A.8) 244 F. 719, 723; Cornwall Press, Inc., v. Ray Long & Richard R. Smith, Inc., et al. (C.C.A.2) 75 F.(2d) 276, 277; McDonough et al. v. Owl Drug Co. et al. (C.C.A.9) 75 F.(2d) 45, 52, 53; In re E. C. Denton Stores Co. (D.C.Ohio) 5 F. Supp. 307; In re Mississippi Valley Utilities Corporation (D.C.Del.) 2 F.Supp. 995; In re Campbell County Hardware Co. (D. C.Tenn.) 15 F.(2d) 78.

There appears to be no serious controversy between the parties as to the general rule that a court of bankruptcy has jurisdiction to determine controversies or liens upon assets in connection with the administration of estates in bankruptcy, or that the court may, under certain circumstances, refuse to assume jurisdiction or to retain jurisdiction where it appears that the purpose of the bankruptcy proceeding is a fraudulent one.

It is necessary to decide whether the general rules of law upon which the appellants rely are here applicable. The appellants are not, in any proper sense, parties to the bankruptcy proceedings. They are not creditors of the bankrupt, nor stockholders; nor have they any legal title or right to possession of the assets. They have no lien upon the assets by virtue of any contracts or dealings with the bankrupts. They are bondholders of General Theatres, which once owned a majority of the stock of Fox Film, which in turn owned stock of Wesco, which owned the stock of the bankrupts and other subsidiary corporations. Appellants say that the Chase National Bank bore a fiduciary relation to the bondholders of General Theatres, and, wrongfully, and in violation of its trust, acquired from it stock of Fox Film and thus became a constructive trustee for the appellants and other bondholders of the stock so improperly acquired; that the bank, by using this stock to control the affairs of Fox Film, and, through it, the affairs of its subsidiaries, even unto the third or fourth generation, for its own selfish advantage, has now become, as between itself and the bondholders, in equity, a trustee of the physical assets which underlie this pyramid of corporate structures; and that in this suit by the appellants, all corporate forms will be disregarded, and the physical assets of the bankrupts and other similar subsidiaries treated as in the possession of the Chase National Bank as trustee for the bondholders of General Theatres. They assert that a part, at least, of these trust assets are in the custody of the court of bankruptcy by reason of the fact that the bank caused the bankrupts, who were two of its creatures, to file voluntary petitions, and that it then caused another of its creatures to buy up the claims of creditors and use them in purchasing the assets from the trustee in bankruptcy. According to the petitions, as we analyze them, the Chase National Bank, if the sales of the assets are completed, will have succeeded in passing the assets of the bankrupts, which, according to the allegations of the appellants' petitions, it in equity owned, controlled, and held in trust for appellants and other bondholders, through the court of bankruptcy (thereby freeing such assets from the claims of creditors of the bankrupts for less than the claims were worth) to another corporation which it has created and owns and controls. Hence, according to the petitions, the net effect of what the bank will have accomplished if the sales go through, will be about the equivalent of its having passed these assets from its right hand to its left hand. What the appellants seek by their petitions is an order or decree requiring the bank to pass the assets back to its right hand, or a decree that the bank hand them over to the bondholders of General Theatres to be applied on their bonds.

It would be difficult to imagine a controversy in which the court below would have less practical reason to be interested. For more than two years before the appellants' petitions were filed, it had been administering these assets, and, through its officers, conducting the extensive business of the bankrupts. It had collected their assets, and passed upon the claims of their creditors, all of which had been paid, purchased, or in some way satisfied by the time the appellants' petitions were filed. The title of the trustee in bankruptcy to the assets was marketable, so that the assets could be sold, and offers had been made for them, which the court determined should be accepted. The proceedings were about to be terminated, when these bondholders of General Theatres, a holding

company, a sort of corporate parent twice removed from the bankrupts, filed their petitions. The controversy which they initiated was of no interest to the creditors of the estates or to the bankrupts, of no consequence to the trustee in bankruptcy, and certainly of no importance to the court so far as the administration of the estates in bankruptcy was concerned. The bankrupts, when the appellants' petitions were filed, were about to take their departure from the court through the exit, and no useful purpose would be served by forcing them to walk backwards and leave by the entrance. Many things had been done during the course of administration which could not be undone. Services had been rendered and expenses incurred by the officers of the court which had been paid for or were to be paid for out of these assets or by their purchaser, and the fraud alleged to have been perpetrated by the Chase National Bank upon the appellants did not and could not deprive the court of its jurisdiction of these estates or of its right to terminate these bankruptcy proceedings in the regular way if it saw fit to do so. An application to vacate an adjudication under such circumstances is clearly addressed to the discretion of the court of bankruptcy. McDonough et al. v. Owl Drug Co. et al. (C.C.A.9) 75 F.(2d) 45, 53, certiorari denied McDonough et al. v. Owl Drug Co. et al., 295 U.S. 750, 55 S.Ct. 829, 79 L.Ed. 1694; Banco Commercial De Puerto Rico v. Hunter Benn & Co. (C.C.A.1) 31 F.(2d) 921; Ewing et al. v. Forrester Nace Box Co. et al. (C.C.A.8) 12 F.(2d) 864; In re De Lue (C.C.A.1) 295 F. 130, 132; In re First National Bank of Belle Fourche et al. (C.C.A.8) 152 F. 64, 11 Ann.Cas. 355.

Assuming, without deciding, that appellants had a sufficient interest in the proceedings to ask that the adjudications be vacated, we are satisfied that, under the circumstances, the court was guilty of no abuse of discretion in refusing to entertain the petitions in so far as they sought to vacate the adjudications.

■ We are also convinced that the court was not required to assume jurisdiction of the appellants' controversy with the Chase National Bank and its alleged subsidiaries or affiliates, even though the appellants asserted, in connection therewith, an equitable lien upon assets in the custody of the court of bankruptcy. Whether the petitions showed a right to an equitable lien

upon these assets, we think it is unnecessary and inappropriate to decide. Even if the court was required to assume jurisdiction without regard to the interests of the estates in bankruptcy, and for the protection of the appellants, we think it is clear that their petitions not only fail to show any need of protection, but that they affirmatively show that no injury can come to them (appellants) by reason of the administration of the estates. There is no allegation that the Chase National Bank will be unable to account, as trustee, to the appellants for any damages caused by its alleged fraudulent conduct, nor are there any allegations which would justify an inference that any equitable rights or liens which appellants have will be in any way disturbed by the bankruptcy proceedings. The record shows that the court did not authorize the sale of the assets of the bankrupts free of liens. It has sold nothing more than the interest of the bankrupts in the assets, which the purchaser takes subject to any rights, equities, or liens that the appellants may have, and with notice of their claim that these are trust assets and that they have a lien upon them. See, in this connection, Schmidt v. Ryon (C.C.A.3) 281 F. 790, 793; In re Muhlhauser et al. (C.C.A.6) 121 F. 669; In re Moose River Lumber Co. (D.C.N.Y.) 251 F. 409; In re Vanoscope Co. (C.C.A.2) 244 F. 445. The collection of the assets, the administration of the estates, and the distribution of the assets required no determination of the rights of the appellants. The court could perform all of its administrative functions without determining this controversy. A court of bankruptcy should not be obliged to extend its jurisdiction beyond what is reasonably required to enable it to carry out the purposes for which it is created, namely, to bring about a speedy and efficient administration and distribution of the estates of bankrupts. We think it has no jurisdiction to adjudicate controversies having no proper relation to the business with which it is intrusted.

The res primarily involved in these petitions is the stock of Fox Film, which is not in the custody of the court of bankruptcy; and, before the appellants start tearing down corporate structures, we think they should first establish, in some tribunal having jurisdiction of that res, their equitable rights therein.

■ In referring to the equitable jurisdiction of the bankruptcy court, we said in

Burton Coal Co. v. Franklin Coal Co. et al., 67 F.(2d) 796, at page 797: "That it is a court of equity in the sense that 'its judge and referees, in adjudging the rights of parties entitled to their decision, are governed by the principles and rules of equity jurisprudence,' is beyond question. Larson et al. v. First State Bank of Vienna, S. D., et al. (C.C.A.8) 21 F.(2d) 936; In re Rochford (C.C.A.8) 124 F. 182; In re Ben Boldt, Jr., Floral Co. (C.C.A.10) 37 F.(2d) 499. It has not, however, plenary jurisdiction in equity, but is confined, in the application of the rules and principles of equity, to the jurisdiction conferred upon it by the provisions of the Bankruptcy Act [11 U.S.C.A. § 1 et seq.], reasonably interpreted. Johnson v. Norris (C.C.A.5) 190 F. 459, L.R.A.1915B, 884; In re Kane (C.C.A.) 127 F. 552."

This statement was reaffirmed in Southern Bell Telephone & Telegraph Co. v. Caldwell et al. (C.C.A.8) 67 F.(2d) 802; and to the same effect is Billings Credit Men's Ass'n v. Bogert (C.C.A.9) 5 F.(2d) 307, 309.

In McDonough et al. v. Owl Drug Co. et al. (C.C.A.9), supra, 75 F.(2d) 45, 53, it is said: "When a court of bankruptcy is asked to assert its incidental equity powers, its action must be governed by precisely the same principles and considerations which would move a chancellor to action."

In Brumby v. Jones et al. (C.C.A.5) 141 F. 318, 320, the court said: "The District Court does not possess the general power to entertain a suit in equity, and, unless the bankrupt act has conferred upon it jurisdiction to entertain a plenary suit in equity, such a suit cannot be maintained. Havens & Geddes Co. v. Pierek, 120 F. 244, 57 C.C.A. 37; Bardes v. First Nat. Bank, 178 U.S. 535, 20 S.Ct. 1000, 44 L.Ed. 1175; First National Bank v. Chicago T. & T. Co., 198 U.S. 280, 25 S.Ct. 693, 49 L.Ed. 1051. The bankrupt act confers on the district courts, as courts of bankruptcy, such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings. As courts of bankruptcy, they are vested with power to collect, reduce to money, and distribute the estates of bankrupts, and to determine controversies in relation thereto. Bankr.Act July 1, 1898, c. 541, § 2, 30 Stat. 545, 546 (U.S.Comp.1901, pp. 3420, 3421 [see 11 U.S.C.A. § 11]). We think it clear that the controversies referred to relate to the collection, sale, and distribution of such estates. The jurisdiction of the district court, as granted by the bankruptcy act, is unquestionable bankrupt jurisdiction, and not general jurisdiction to hear and determine controversies between adverse third parties, which are not strictly and properly a part of the bankruptcy proceedings."

In Dudley v. Easton, 104 U.S. 99, at page 103, 26 L.Ed. 668, the Supreme Court used the following language: "An assignee in bankruptcy represents the general or unsecured creditors, and his duties relate chiefly to their interests. He is in no respect the agent or representative of secured creditors, who do not prove their claims. He need not take measures for the sale of incumbered property, unless the value of the property is greater than the incumbrance. He has nothing to do with the disputes of secured creditors among themselves, unless it becomes necessary for him to interfere in order to settle their rights in the general estate, or to determine whether there is an excess of property over what is required for the purposes of the security. * * * As to everything except fraudulent conveyances and fraudulent preferences under the bankrupt law, he takes by his assignment, as a purchaser from the bankrupt, with notice of all outstanding rights and equities. Whatever the bankrupt could do to make the assigned property available for the general creditors he may do, but nothing more, except that he may sue for and recover that which was conveyed in fraud of the rights of creditors, and set aside all fraudulent preferences."

In Chauncey et al. v. Dyke Bros. et al. (C.C.A.8) 119 F. 1, 3, this court, speaking through Judge Thayer, said: "The bankrupt court had no rights to assume jurisdiction of a controversy between third parties, in which the trustee was not concerned, and decide whose claim was paramount in equity, merely because the claimants happened to be creditors of the bankrupt estate, or merely because the liens affected a part of the bankrupt's property. The bankrupt act confers no such authority."

It was pointed out in that case that a court of bankruptcy may, in order to make proper distribution of the funds in its hands, determine conflicting claims, with reference to which it was said (119 F. 1, at page 4): "We accordingly conclude that the lower court had the power, incidental

to the right of disposition of a fund that had or would come lawfully into the custody of the trustee in bankruptcy, to determine how the fund should be divided among the rival claimants."

In Henrie v. Henderson et al. (C.C.A. 4) 145 F. 316, 320, a case which involved a proceeding in a bankruptcy court, seeking to restrain the trustee from making a deed to a purchaser of land from the bankrupt estate, the court said: "It is a controversy which does not in the slightest degree affect the creditors of J. B. Henderson, the bankrupt, nor is the trustee in any wise affected. Stripped of all extraneous matters, it appears to be an effort on the part of Henderson to compel specific performance of a contract relating to the sale of land. There is no provision which gives the bankruptcy court jurisdiction to hear and determine controversies of this kind. The object of the bankruptcy law is to afford the means by which the creditors of the bankrupt may secure an equitable and fair distribution of the bankrupt's property, etc., and the act contemplates that any collateral questions growing out of the settlement of the bankrupt's estate may be heard and determined in that court. But here we have parties who are contending about a matter which is in no way related to or connected with the affairs of the bankrupt. Under these circumstances, we fail to understand the theory on which this proceeding was instituted."

See, also, Nixon v. Michaels et al. (C. C.A.8) 38 F.(2d) 420, in which this court has thoroughly discussed and considered the jurisdiction of the courts of bankruptcy over controversies not properly incidental to the administration of the bankrupt estates.

It is true that the cases referred to differ in their facts from the situation here presented, but we regard the principles announced as applicable.

The appellants call their petitions supplemental, ancillary, and dependent, but we think they are to be regarded mainly as applications to vacate adjudications or, in the alternative, to impress liens on the assets of the bankrupts, at least in so far as the petitions are in any way germane to the proceedings in bankruptcy. They are certainly not ancillary and dependent bills in so far as they inject new and irrelevant subject-matter and new parties into the bankruptcy proceedings, and, for that reason, could not be maintained as such.

"If the bill contains matter not before litigated by the same parties standing in the same interests, that is, if new parties are brought in, and new matter charged as a basis of relief, then the bill is not ancillary, but an original bill, and cannot be supported by the former suit, but must stand independently on its parties and subject-matter for jurisdiction in the Federal courts." Simkins Federal Practice, § 745; Union Cent. L. Ins. Co. v. Phillips (C.C.A. 5) 102 F. 19; Anglo-Florida Phosphate Co. v. McKibben (C.C.A.5) 65 F. 529; Raphael v. Trask et al. (C.C.N.Y.) 118 F. 777; Campbell et al. v. Golden Cycle Min. Co. et al. (C.C.A.) 141 F. 610; Shinney v. North American Savings, Loan & Building Co. et al. (C.C.Utah) 97 F. 9.

We have reached the conclusion that the appellants cannot compel the court of bankruptcy to assume jurisdiction of these petitions, and that the court properly dismissed them.

The orders appealed from are affirmed.