In the Matter of **LAW RESEARCH SERVICE, INC.,** Debtor-Appellee,

v.

Alton W. and Evelyn K. **HEMBA,** Claimants-Appellants.

No. 71 B 598.

United States District Court, S. D. New York.

Oct. 31, 1974.

Otterbourg, Steindler, Houston & Rosen, P. C., New York City, for claimants-appellants; Jonathan N. Helfat, New York City, of counsel.

Krause, Hirsch & Gross, New York City, for debtor-appellee; Ellias C. Hoppenfeld, New York City, of counsel.

## OPINION

WERKER, District Judge.

Appellants Alton and Evelyn Hemba seek review of the Bankruptcy Judge's decision in an arrangement proceeding under Chapter XI of the Bankruptcy Act reclassifying their secured claim against the debtor as an unsecured claim because of failure to perfect by proper filing in accordance with § 9–103 of the New York Uniform Commercial Code. A summary of the history of this case is essential to an understanding of this court's decision on appeal.

Prior to initiating the Chapter XI proceeding below, Law Research Service (LRS) was in the business of providing attorneys with legal materials which it maintained on a computer owned and operated by Western Union Telegraph Company of New York. In 1966 debtor contracted to provide appellants with exclusive distributorship rights to its services in the Jacksonville, Florida area.

Western Union subsequently withdrew the use of its computer, and LRS was unable to perform its duties under the franchise contract. Appellants commenced proceedings before the American Arbitration Association against LRS for breach of contract and damages, and at approximately the same time LRS began a. separate action in New York Supreme Court against Western Union. While the Western Union action was pending, and before an arbitration hearing could be held in the Hemba case, the debtor and appellants began settlement negotiations, based in part upon LRS's expectation of recovery in its suit against Western Union.

The settlement agreement reached provided that a consent judgment for $22,500 in appellants' favor would be entered in New York Supreme Court, with the understanding that appellants would not issue execution on it until determination and payment of damages in the Western Union suit, and that debtor would immediately deliver to appellants "an assignment of any recovery it may have in the aforementioned action against Western Union" up to the amount of the consent judgment plus interest. These terms were carried out, and appellants filed a notice of assignment with Western Union and its attorneys. LRS won a judgment in its suit against Western Union which was on appeal when LRS filed a petition for Chapter XI arrangement on June 18, 1971.

In order to assure effectuation of an arrangement, debtor in April 1972 settled the Western Union appeal with the approval of the Bankruptcy Court. According to this settlement, part of the proceeds from Western Union were to be used to pay unsecured creditors under a plan of arrangement yet to be determined, and part was to be deposited in a special bank account for the purpose of satisfying the claims of debtor's secured creditors. In his order approving the settlement Bankruptcy Judge Herzog required that withdrawals from the special bank account be made only over his countersignature. Debtor and its unsecured creditors [1] thereafter agreed upon a plan of arrangement, which was confirmed by the Bankruptcy Judge on June 20, 1972. The plan did not contain provision for retention of jurisdiction by the Bankruptcy Court after confirmation.

On July 6, 1972 the Bankruptcy Judge amended his order of confirmation to allow LRS to file objection to "claims proved and filed but not allowed or disallowed herein prior to the date hereof." As a result of the amendment, debtor applied to reduce or expunge claims by creditors who asserted a security interest in its assets, objecting to appellants' claim on the ground that "claimant did not perfect lien and said alleged lien is voidable under Section 60 of the Bankruptcy Act" [2]. In December 1972 appellants filed an answer to debtor's application asserting as an affirmative defense the Bankruptcy Court's lack of jurisdiction. The answer contended that (1) the debtor's plan of arrangement did not specifically provide for post-confirmation jurisdiction; (2) the signing of the order of confirmation divested the court of jurisdiction to decide the debtor's application; and (3) the amendment to the order of confirmation did not confer jurisdiction to determine their status as secured creditors because by its language it only applied to unsecured claims previously filed during the arrangement proceeding. [3]

In November 1973, for reasons unknown to this court, appellants applied to strike their jurisdictional affirmative defense and consent to the Court's jurisdiction. The debtor on the other hand opposed the application, thus urging rejection of the very jurisdiction which it had invoked. [4] In the interests of expediting the case, Judge Herzog decided the question without benefit of a full hearing. In his Decision on Motion to Amend Answer and Cross Motion to Dismiss Hemba Claim he stated:

> First of all, it ill behooves the debtor to question the court's jurisdiction since it was the one who invoked it in

1. Section 307 of the Bankruptcy Act defines the term "creditors" as used in Chapter XI to include only the holders of unsecured debts. 11 U.S.C. § 707 (1970). Section 306(1) defines "arrangement" as "any plan of a debtor for the settlement, satisfaction, or extension of time of payment of his unsecured debts." 11 U.S.C. § 706(1) (1970). *See also* In re Herold Radio & Electronics Corp., 191 F.Supp. 780 at 792 (S.D.N.Y. 1961): "The provisions of Chapter XI permit only a composition of the indebtedness of unsecured creditors. Any other steps needed to complete the debtor's rehabilitation are unavailable under Chapter XI."

2. Section 60 allows a trustee in bankruptcy to avoid certain transfers of property made by the debtor. 11 U.S.C. § 96 (1970). Section 342 of the Act vests a debtor in possession with all the powers of a bankruptcy trustee. 11 U.S.C. § 742 (1970).

3. Appellants never filed a claim (secured or unsecured) in the arrangement proceeding.

Their failure to do so, however, is hardly surprising:

> There is no provision of the Bankruptcy Act forcing a secured creditor to prove his claim in order to obtain satisfaction from his security. He may, as we pointed out previously, abstain from entering the bankruptcy proceeding and rely upon his security to cover the debt. Indeed, if the security is sufficient to cover the debt, a secured creditor's claim will not be allowed, making the act of filing a useless, though permissible, gesture. Even if the security has passed into the hands of the trustee, a secured creditor need not prove his claim to retain his secured status.

In the Matter of Jack Kardow Plumbing Co., 451 F.2d 123, 134 (5th Cir. 1971).

4. The Bankruptcy Judge subsequently determined that the debtor's unusual behavior was motivated by a desire for delay.

the first place seeking relief by way of objecting to the Hemba claim. Second of all, the funds set apart in the escrow account, for the satisfaction of secured claims as they are determined, are subject to withdrawal only upon the countersignature of the referee. Since the funds are subject to the control of this court, it is clear that this court has jurisdiction to determine all claims to participate in such funds. This jurisdiction to determine claims to property remaining in the court's possession or control exists regardless of whether the confirmed arrangement includes express provision for retention of jurisdiction pursuant to § 368 of the Act. In re Kessler, 90 F. Supp. [1012] 1013 (S.D.Cal.C.Div. 1950). See also Murphy v. John Hoffman Co., 211 U.S. 562 [29 S.Ct. 154, 53 L.Ed. 327] (1909).

With the jurisdictional question thus resolved, the parties proceeded to a trial of the issues in January 1974. In his final decision, dated June 28, 1974, Judge Herzog found: (1) that the assignment of a portion of debtor's recovery from Western Union was one of a general intangible within the meaning of U.C.C. § 9–106; (2) that the purpose of the assignment was to provide appellants with collateral security for collection of their consent judgment; (3) that appellants' assignment from debtor was a valid, existing lien; and (4) that appellants had failed to perfect their security interest by filing pursuant to U.C.C. § 9–103. He then concluded:

UCC § 9–301 [(1)] (b) renders an unperfected security interest subordinate to the claims of intervening creditors without notice, and by definition in subsection (3) of § 9–301 a trustee in bankruptcy is specifically included within the term "lien creditor." A debtor in possession "has all the powers of an ordinary trustee." Central Hanover Bank & Trust Co. v. Pres. and Directors of Man. Co., 105 F.2d 130, 131 (2d Cir. 1939). He is a court officer "analogous to a receiver or trustee." In re Wil-Low Cafeterias, Inc., 111 F.2d 83 (2d Cir. 1940).

By virtue of § 70 of the Bankruptcy Act, the trustee in bankruptcy, and therefore, a debtor in possession, is accorded an "ideal" status—he is the "perfect" creditor who has complied with all requirements necessary under applicable law for a lien by legal or equitable process. Accordingly, the lien of the Hembas is subordinate to that of the debtor in possession and they cannot assert a claim to the fund set apart for secured creditors.

■ The issues presented on appeal are whether appellants were required to comply with § 9–103 of the U.C.C. in order to attain a validly perfected security interest, and if so, whether in equity the debtor in possession should be permitted to avoid that lien after the creditors have been paid under a confirmed plan of arrangement, at a time when the benefit of such avoidance would inure only to the debtor himself. Neither party has raised on appeal the question of whether the lower court at that time had jurisdiction to determine the status of appellants' claim against debtor. As noted before, the learned Bankruptcy Judge considered this question and concluded that jurisdiction did exist in the Bankruptcy Court. An appellate federal court, however, must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review. Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934). A recent decision in this district, issued three months after Judge Herzog's decision, casts doubt on his conclusion, and "a federal court which has noted a possible lack of federal jurisdiction must generally decline to proceed further until it has favorably resolved the doubt." Bartle v. Markson, 357 F.2d 517, 520 (2d Cir. 1966).

In In the Matter of Oceana International, Inc., 376 F.Supp. 956 (S.D.N.Y. 1974), on facts very similar to those of the case at hand, Judge Weinfeld found that the Bankruptcy Court lacked jurisdiction to determine a debtor's claim against a secured creditor after confirmation of its plan of arrangement. Briefly, the facts in that case were

these: Having failed to devise a viable plan of arrangement, the debtor, Oceana, was adjudicated a bankrupt and deprived of its debtor in possession status. One of its creditors, a bank holding chattel mortgages, received permission from the Bankruptcy Court to sell the chattels at public auction. Subsequently, Oceana filed a second petition for arrangement which Judge Weinfeld found was "predicated essentially upon a claim that at the foreclosure sale the Bank acquired and then sold . . . [property] . . . not subject to the chattel mortgage, and that a recovery of such property could result in a Plan of Arrangement." 376 F.Supp. at 958. When the petition was granted Oceana as debtor in possession began a summary proceeding against the bank to void the foreclosure sale.

During this second arrangement proceeding Oceana was successful in establishing and confirming a plan of arrangement. The plan itself did not provide for retention of jurisdiction over the summary proceeding against the bank, but the Bankruptcy Judge in his order of confirmation provided for such continuation. When the bank moved to dismiss for lack of jurisdiction, however, the Bankruptcy Judge felt constrained to grant the motion. On appeal, the District Court upheld as "unassailable" the Bankruptcy Judge's decision that jurisdiction did not survive confirmation under any of the Chapter XI sections invoked by Oceana (§§ 367 through 370, 11 U.S.C. §§ 767–770).

The sections of Chapter XI relevant in the *Oceana* case are equally determinative here. Section 367 provides that "upon confirmation of an arrangement . . . except as otherwise provided in sections 369 and 370 of this Act the case shall be dismissed." Section 368 allows retention of jurisdiction after confirmation if so provided in the plan of arrangement, provision not found in the LRS plan. Section 369 states only that the court "shall in any event retain jurisdiction" until the final allowance or disallowance of all claims "affected by"[5] the arrangement which were timely filed but not allowed or disallowed prior to confirmation.[6] As noted above, the Hemba-LRS claim in issue here was not timely filed prior to confirmation and is not "affected by" the arrangement. Lastly, § 370 provides for payment of any § 369 claims allowed after confirmation by the Bankruptcy Court. Clearly here, as in *Oceana*, none of these statutory provisions supports the exercise of Bankruptcy Court jurisdiction. *Accord*, In re WNCN, 246 F.Supp. 30 (S.D.N.Y. 1965).

It could, of course, be argued that a secured creditor can by consenting confer jurisdiction on the Bankruptcy Court to determine the status of its claim after confirmation of the debtor's arrangement. It appears from the facts summarized above that the Hembas did in fact consent to Judge Herzog's jurisdiction by moving to withdraw their jurisdictional affirmative defense. The relevant statutory provision on Bankruptcy Court jurisdiction is section 2(a)(7) of the Bankruptcy Act, 11 U.S.C. § 11(a)(7) (1970), which provides that the Court is vested with such plenary jurisdiction at law and in equity as will enable it to "cause the estates of bankrupts [7] to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except [8] as herein otherwise provided." It also

---

5. "Affected by" has been interpreted to mean "provided for by." In re Grayson-Robinson Stores, Inc., 227 F.Supp. 609 (S.D.N.Y. 1964).

6. It is interesting to note that the language used by Judge Herzog in amending his order of confirmation parallels that of § 369, and

thus would seem to have not been intended to apply to claims such as the Hembas'.

7. This term encompasses Chapter XI debtors. Bankruptcy Act § 302, 11 U.S.C. § 702 (1970).

8. The "except" clause refers to § 23 of the Bankruptcy Act (11 U.S.C. § 46 (1970)),

states in a second clause that the Court can exercise summary jurisdiction in the same realm where the adverse party does not make timely objection.

■ Despite the broad language of § 2(a)(7), the equitable jurisdiction conferred upon the Bankruptcy Court "is not such as would enable it to entertain a plenary suit in equity to adjudicate controversies having no proper relation to the business with which it is entrusted." 1 Collier on Bankruptcy ¶ 2.09 at 178 (14th ed. 1974). *See also* In the Matter of H. R. Weissberg Corp., 458 F.2d 975, 977 (7th Cir. 1972); Sylvan Beach, Inc. v. Koch, 140 F.2d 852, 861 (8th Cir. 1944); Central Hanover Bank & Trust Co. v. Kelby, 133 F.2d 873, 875 (2d Cir. 1943); United States ex rel. Emanuel v. Jaeger, 117 F.2d 483, 486 (2d Cir. 1941); Smith v. Chase Nat. Bank, 84 F.2d 608, 615–616 (8th Cir. 1936); In the Matter of Oceana, *supra*, 376 F.Supp. at 961. An examination of the Advisory Committee's Note to Bankruptcy Rule 915, entitled "Objection to Jurisdiction of Court of Bankruptcy," supports this limitation:

> Rule 915(a), implementing this [2(a)(7)] statutory provision, does not apply to the making of an objection to the jurisdiction of the court to adjudicate and administer the estate of an ineligible bankrupt. *Nor does the rule apply to the making of an objection to the court's jurisdiction over a controversy that does not arise in the course of or relate to the ad-ministration of the estate of an adjudicated bankrupt or his discharge.* * * * Rule 915 repeats the substance of the second clause of § 2(a)(7). The Rule does not purport to confer jurisdiction to the court . . . over any controversy of which the court does not have subject matter jurisdiction.

Collier on Bankruptcy, Special Supplement on Rules of Bankruptcy Procedure at 247–49 (14th ed. 1974) (emphasis added). Accord, Kaplan v. Guttman, 217 F.2d 481, 485 n. 8 (9th Cir. 1954).

■ The jurisdiction of the Bankruptcy Court below was invoked by LRS to establish an arrangement with its unsecured creditors. It seems clear to this court that the enforceability of the Hembas' secured claim is an issue having no proper relation to the business with which that Court was entrusted. Since the Bankruptcy Courts have only such limited subject matter jurisdiction as is conferred on them by statute, any consent to more extensive jurisdiction that might be inferred from the Hembas' actions below is of no effect.

In his Decision on Motion to Amend Answer and Cross Motion to Dismiss Hemba Claim, Judge Herzog cites In re Kessler, 90 F.Supp. 1012 (S.D.Cal.C. Div.1950) and Murphy v. John Hoffman Co., 211 U.S. 562, 29 S.Ct. 154, 53 L.Ed. 327 (1909) as support for his conclusion that his court had jurisdiction to determine all claims to property in its possession.[9] The *Murphy* case, however,

which the Supreme Court has interpreted as limiting plenary jurisdiction to suits in which the ordinary requisites of federal jurisdiction are met (*i. e.*, federal diversity or subject matter requirements set forth in 28 U.S.C. §§ 1331, 1332). Williams v. Austrian, 331 U.S. 642, 649, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947). Section 23 itself provides for certain exceptions to this limitation, but it remains true that in all cases the jurisdiction conferred by § 23 can be no greater than that envisioned by § 2(a)(7).

9. The Bankruptcy Judge assumed that because his countersignature was required for disbursement from the special bank account for secured creditors, he was in constructive possession of those funds. Yet he was in a position to exercise no judicial discretion with respect to those funds; vis a vis the debtor, they were property of secured creditors. The requirement of countersignature, a purely ministerial act, could only have been imposed to safeguard the funds for those secured creditors.

That countersignature is merely a ministerial and not a judicial function is evident from Rule 605 of the Rules of Bankruptcy Procedure. That rule provides for withdrawal and disbursement of money from the

held simply that a claimant to property in the possession of a bankruptcy court could not disturb that court's possession and jurisdiction *during the pendency of the bankruptcy adjudication* by obtaining a writ of replevin from the state courts; only the Bankruptcy Court had jurisdiction *at that time* to determine title as between adverse claimants. In re Kessler held that the Bankruptcy Court had jurisdiction of a post-confirmation action by a Chapter XI receiver to invalidate a mortgage where any proceeds recovered by the receiver from sale of the property in the court's possession were to be distributed under the plan of arrangement to the unsecured creditors. Jurisdiction in each case was thus asserted over matters directly related to the purpose of the particular Bankruptcy Act proceeding; in each instance jurisdiction was invoked to determine whether as part of the central bankruptcy resolution assets could be retained by the debtor for the benefit of creditors.

In contrast, in the proceeding below the parties sought a determination totally unrelated to the debtor's Chapter XI proceeding, its plan of arrangement, and the plan's benefit to creditors. In such circumstances, though the property in dispute is in its possession and the parties give their consent, the Bankruptcy Court simply does not have jurisdiction to determine title. *Cf.* In the Matter of Oceana, *supra,* 376 F.Supp. at 961. *See also* Texas Consumer Finance Corp. v. First National City Bank, 365 F.Supp. 427 (S.D.N.Y.1973), where District (now Circuit) Judge Gurfein found that

jurisdiction as to secured claims existed in the Bankruptcy Court only because retention of jurisdiction and distribution of any post-confirmation recovery by the debtor were key provisions of the plan of arrangement.

In this case appellee's unsecured debts were fully discharged when its plan of arrangement was confirmed below. Prior to confirmation, any recovery LRS gained from objection to the Hembas' claim could have been distributed to unsecured creditors as part of the plan of arrangement. Indeed, a debtor in possession under the Bankruptcy Act holds in trust and exercises its avoidance powers solely for the benefit of creditors. In re Martin Custom Made Tires Corp., 108 F.2d 172, 173 (2d Cir. 1939). Upon confirmation, however, where the debtor's plan as here provides neither for retention of jurisdiction nor for any retained interest for the benefit of creditors in the proceeds of a recovery, there is no basis for any distribution to creditors in the event debtor succeeds upon its claims, and thus, no way a determination of claims could contribute to effectuation of the debtor's plan of arrangement. In the Matter of Oceana, *supra,* 376 F.Supp. at 962. The Bankruptcy Court consequently had no jurisdiction to decide the dispute as to the Hembas' secured claim.

The decision of the Bankruptcy Judge below is hereby vacated. There is no need to reach the issues raised on appeal.

So ordered.

---

bankrupt's estate and as the Advisory Committee's Note indicates, it specifically omits the requirement of its predecessor (General Order 29) that all checks be countersigned by the "judge, referee, clerk, or an assistant." Collier on Bankruptcy, Special Supplement on Rules of Bankruptcy Procedure at 169–70

(14th ed. 1974). Furthermore, even under the old rule prescribed by Order 29 countersignature was viewed as an administrative rather than a judicial function. *See* Maryland Casualty Co. v. Central Trust Co., 265 App. Div. 416, 422, 39 N.Y.S.2d 293, 298 (4th Dept., 1943).