**In re HARDWICKE COMPANIES INCORPORATED, Debtor,**

**MURRAY, HOLLANDER, SULLIVAN & BASS, Appellant,**

v.

**HARDWICKE COMPANIES INCORPORATED, Appellee.**

No. 85 Civ. M 47.
Bankruptcy No. 83 B11453 (BRL).
Adv. No. 85–5759A.

United States District Court,
S.D. New York.

Dec. 26, 1985.

Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey by A. Peter Lubitz, Jay L. Gottlieb, New York City, for Appellee, Hardwicke Companies Inc., Debtor.

Skadden, Arps, Slate, Meagher & Flom by Michael L. Cook, Dana H. Freyer, New York City, for appellant, Murray, Hollander, Sullivan & Bass.

## DECISION ON LEAVE TO APPEAL

MILTON POLLACK, Senior District Judge:

Murray, Hollander, Sullivan & Bass ("Murray Hollander"), a law firm, seeks leave to challenge the jurisdiction of a Bankruptcy Judge to entertain four legal malpractice counterclaims asserted against them by a Chapter 11 Debtor ("Hardwicke"). These counterclaims, raising defenses to Murray Hollander's claim for legal services and disbursements filed against the Debtor prior to the confirmation, were asserted after confirmation of a Plan of Reorganization. The Bankruptcy Judge denied Murray Hollander's motion to dismiss these counterclaims. In so doing, he failed to rule on the request that he abstain from deciding the counterclaims, in effect leaving the question of abstention to the district court for consideration. *See* 28 U.S.C.A. § 1334(c)(1) (West Supp.1985).

For the reasons shown hereafter, leave to appeal from those rulings is granted. The questions presented raise difficult problems of law that require early resolu-

tion in the interests of fairness and justice. No conceivable prejudice will inure to the Debtor or to any other party by the separation of these questions from the remaining matters left herein after confirmation of the Plan to be administered by the Bankruptcy Court.

## BACKGROUND

On October 4, 1983, the Debtor, Hardwicke, filed a petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. Murray Hollander filed a claim as a secured creditor for unpaid legal services and disbursements, amounting to approximately $200,000, for the periods of time between January 27 and May 31, 1982, and from January through July, 1983.

Hardwicke presented a Plan of Reorganization ("Plan") which was confirmed by the creditors on February 28, 1985. The Disclosure Statement, approved by the Bankruptcy Judge on January 30, 1985 for distribution to creditors to solicit approval of the Debtor's Plan, made no mention of the existence of any counterclaims by the Debtor against the Murray Hollander lawyers for legal malpractice or for any other cause.

Pursuant to the Plan, unsecured creditors received at their option either cash payments or stock in a new corporation that Hardwicke would be merged into immediately after confirmation.

Article VIII, Paragraph 5 of the Plan specifically provided that, within sixty days after the Confirmation Date, the Debtor should commence, file, or assert all objections to disputed claims dealt with in this Plan that had not been filed previously. The Disclosure Statement stated expressly that the only objections to the allowance of claims that the Debtor would assert were claims in the nature of "setoffs."

On April 30, 1985, after confirmation of the Plan, Hardwicke objected to the Murray Hollander claim and, additionally, asserted five counterclaims against it, four of which were legal malpractice claims on matters going back long before the reorganization proceedings. These counterclaims are admittedly wholly unrelated to the

claim filed by Murray Hollander for their recent legal services and disbursements.

■ These four counterclaims do not arise under Title 11, and do not arise in nor are related to Hardwicke's consummated reorganization case. There is a serious question whether they could be catalogued as compulsory counterclaims in an ordinary Federal Court litigation. The counterclaims do not arise out of the transactions or occurrences that are the subject matter of the fee claims of Murray Hollander. Moreover, the statute granting Federal Court jurisdiction over counterclaims arising under Title 11, or arising in or related to cases under Title 11, 28 U.S.C.A. § 1334(b) (West Supp.1985), does not facially appear to apply to the malpractice claims.

Legal malpractice claims are state-created claims grounded in negligence, breach of fiduciary duty, or breach of contract. Since the confirmed plan permitted the assertion of "setoffs" only as against the claims of a creditor of the debtor's estate, Murray Hollander argues that the alleged malpractice counterclaims cannot be brought under the umbrella of "setoffs."

The malpractice claims (second, third, fourth, and fifth counterclaims) seek damages of approximately $13,000,000 and such claims are probably entitled to a jury trial, if properly demanded, although ordinarily the Bankruptcy Court does not try issues with juries. Such a procedure raises the question whether on *de novo* review by the district court, a second jury trial would have to be had.

Moreover, any recovery on the counterclaims by Hardwicke will not involve property of, and will not have any impact on, Hardwicke's estate available for distribution to those of the creditors of the estate who elected not to remain with the reorganized company as stockholders. The Plan made no provision for distribution of proceeds to all of Hardwicke's former creditors from any of the counterclaims in question. Thus, the creditors who took cash under the Plan would not share in any recovery thereon. Eliminating or reducing any claim asserted against the reorganized

Debtor that results in a refund of monies to pay that claim may be utilized by the Debtor in any manner that it determines, in its sole discretion, to be in its own best interests.

The Bankruptcy Judge ruled that the Court had subject matter jurisdiction to administer the counterclaims, but that it would be appropriate for the petitioner to ask the district court to withdraw the counterclaims from the Bankruptcy Court pursuant to 28 U.S.C. § 157(d) (West Supp. 1985).

■ On November 27, 1985, Murray Hollander served a Notice of Appeal to this Court from the ruling below. On December 10, 1985, the issue whether an appeal should be allowed to this Court was presented to the undersigned as the Part I Judge.

28 U.S.C.A. § 158(a) (West Supp.1985) provides that the district courts of the United States shall have jurisdiction to hear appeals from interlocutory orders and decrees of bankruptcy judges in cases referred to them under section 157. The order appealed from, denying a motion to dismiss for lack of jurisdiction, is interlocutory, as is a denial of abstention on a claim asserted in the bankruptcy proceedings. It is unclear from the record whether the Bankruptcy Judge intended to have the guidance of the district court on the abstention question; his successive conclusions on that issue, however, appear to support such a conclusion. The standards set forth in 28 U.S.C. § 1292(b) (1982) for certification of interlocutory orders to the courts of appeal have been used as guides by the district courts for taking appeals from bankruptcy orders. *In re Johns-Manville Corp.*, 45 B.R. 833, 835 (S.D.N.Y.1984).

Section 1292(b) provides for the grant of interlocutory appeals on a controlling question of law, concerning which there is substantial ground for difference of opinion, when an immediate appeal from the order may materially advance the ultimate termination of the litigation. The Order appealed from in this case satisfies this test. *See e.g., Bank of America, N.T. & S.A. v. World of English, N.V.*, 23 B.R. 1015,

1019; *see also In re Turner*, 724 F.2d 338 (2d Cir.1983); *Whiteford Plastics Co. v. Chase National Bank*, 179 F.2d 582, 584 (2d Cir.1950); *Law Research Service, Inc. v. Hemba*, 384 F.Supp. 729 (S.D.N.Y.1974); *In re Bentley*, 47 B.R. 266 (Bankr.S.D.N.Y. 1985).

At one point in the proceedings, the Bankruptcy Judge stated that although he was "preliminarily [sic] finding subject matter jurisdiction with respect to the four counts of the counterclaim," he added, "I am not inherently [sic] turning away on the question of abstention. But since the law is so unsettled, if you ever want, you can seek removal." (R. 51–52). Shortly thereafter, the Judge added, "I am provisionally [sic] prepared to find that there is subject matter jurisdiction over the counter-claim." (R. 52). Challenged to explain the term "provisionally," the Judge then said, "that's not a provisional ruling. That is the Court's ruling. I find jurisdiction over the subject matter jurisdiction [sic] over the counterclaim. I do not rule with respect to the second branch of the issue, and that is with respect to the request for abstention on those four counterclaims. And I am leaving it to Mr. Cook, who indicates that he is considering whether or not he will seek removal or some other procedure concerning those four remaining counterclaims." (R. 53). Later, he added, "it seems that the withdrawal would be limited only to the malpractice portion of the issues between the parties. I have no State Court proceeding at this point in time to remand, so that's out of context." (R. 54).

The circumstances and dilemmas posed by the record deserve early resolution by a definitive ruling of the unusual facts; there is considerable doubt as to the proper ruling to be made on these issues: 1) whether the malpractice claims should be removed from, or remain in, the Bankruptcy Court; 2) whether those claims, if they are to remain, be separated and deferred until the unrelated claim for fees has been resolved; 3) whether the Bankruptcy Court may utilize a jury trial if the malpractice claims stay there; 4) whether the parties will be faced with a second jury trial in the district court even if a jury trial is held in

the Bankruptcy Court; 5) whether the Bankruptcy Court should abstain from trying the unrelated state-created claims because of the peculiar circumstances, including the timing of the assertion of the malpractice claims which were not relied upon in promulgating the Plan; 6) whether the Bankruptcy Court should dismiss the malpractice counterclaims without prejudice and remit the Debtor to State Court for their resolution under the familiar doctrine that the Federal Courts are not obligated to hear unrelated pendent claims.

Accordingly, enough has been shown to warrant granting the motion for leave to appeal, and expedited consideration by the assigned Judge on the appeal.

The Clerk of the Court is directed to file the Notice of Appeal served by Murray Hollander; they may file the usual cover sheet with the Cashier and obtain an assignment from the Bankruptcy wheel of the District Court for a Judge to hear the appeal.

The Bankruptcy Judge is requested to transmit the record to this Court forthwith.

So Ordered.