## CENTRAL HANOVER BANK & TRUST CO. v. KELBY.

### No. 153.

Circuit Court of Appeals, Second Circuit.

Jan. 29, 1943.

---

[1] One carload was shipped originally to Omaha, Nebraska, but was re-consigned in transit to Lincoln, Nebraska.

874

Francis S. Bensel, of New York City (Larkin, Rathbone & Perry, Henry E. Kelley, and W. Frederick Knecht, all of New York City, on the brief), for petitioner-appellant.

Clinton J. Ruch, of New York City (Frueauff, Burns & Ruch and Ross W. Lynn, all of New York City, on the brief), for respondent-appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The petitioner herein, acting as trustee of certain guaranteed bonds, having had allowed its claim against the bankrupt, New York Investors, Inc., upon the latter's guaranty of the bonds, sought a declaration from the bankruptcy court as to the ultimate beneficiaries to receive the dividends paid or to be paid on the claim. The referee considered this to be an issue entirely collateral to the bankruptcy, and ruled that he had no jurisdiction to make the declaration. The district court affirmed, stating that on the conceded facts it should not "assume jurisdiction," thus "delaying and confusing the closing of the. estate"; and its order "refused jurisdiction" over the matters involved in petitioner's application. We think that the result reached is correct.

The original bond issue, upon which petitioner acted as trustee, was one by the much litigated Prudence Company, Inc., in the amount of $15,000,000 "Guaranteed Collateral Trust 5½% Gold Bonds" of May 1, 1926, payable in 1961. These bonds were secured by collateral deposited with petitioner by Prudence; they carried also a guaranty of principal and interest by New York Investors, Inc., under its then corporate name of Realty Associates. Prudence filed its petition for reorganization early in 1935, and thereafter petitioner,

out of the collateral in its hands, paid $300 upon each $1,000 of the $12,667,000 publicly held bonds. A plan of reorganization was approved by the court and consummated as of April 1, 1937, under which a new company, Prudence Securities Corporation, issued new 5½% bonds to be substituted, together with certain cash and scrip, for the old bonds. Pursuant to the plan the remaining collateral was transferred to the Empire Trust Company, trustee of the new issue; and all but a negligible number of the holders of old bonds turned them in for the substituted security. The mechanics of this transaction included the signing by holders of such of the old bonds as were registered of blank assignments of the bonds.

The Prudence plan, however, specifically provided that discharge of the original debtor "shall not be deemed to be a consent by any of the holders of the presently outstanding bonds to the discharge of New York Investors, Inc. upon its guaranty of the existing bonds." Meanwhile New York Investors, Inc., was also in court. Defaulting upon its guaranty in 1933, it filed its petition for reorganization late in 1934, and on December 14, 1938, it was ordered liquidated as a bankrupt under Bankruptcy Act, § 77B, sub. c, clause (8), 11 U.S.C.A. § 207, sub. c(8). Pursuant to order of the Bankruptcy Court, petitioner on or about March 1, 1938, proved, and was allowed, a claim as trustee on the guaranty of the old bonds in the amount of $6,216,661.99, it being provided that this claim should be reduced "to the extent" that the holders of these bonds should individually file proofs of claim which were not disallowed. On February 28, 1940, petitioner received from the trustee in bankruptcy, respondent herein, the sum of $95,364.19 as a liquidating dividend of 1.9% upon its claim.

Thereafter by order of August 14, 1941, the amount of petitioner's claim was amended as of March 1, 1938, first by being increased by recomputation of the unpaid bonds outstanding to $6,721,161.99, and second by being reduced by the aggregate amount of the claims allowed to individual holders in the sum of $1,599,617.74; and then as thus reduced to $5,121,544.25, it was "in all respects allowed" as a claim against the bankrupt estate. As a result of the increase in the face of the claim, there became due, as a part of the liquidating dividend of 1.9%, the additional sum of $1,945.15, which was unpaid at the time of

the hearing below, but which the trustee states has since been paid.

Relying on these facts, petitioner filed its petition before the referee on March 4, 1942, asserting at some length that it was or would be subject to claims from holders of both the old and the new bonds for the dividend already paid, as well as the one about to be paid and any further liquidating dividends, and praying for an order making a determination of the basis of distribution of the dividends and the person or classes of persons to whom distribution should be made. Both the referee and the court stressed petitioner's desire to be advised as to the funds already in its hands. Petitioner now asserts that they misconceived its prayer for relief, which was specifically directed to the dividends still to be paid it. In view, however, of both the allegations of the petition proper and petitioner's statements at the referee's hearing, there can be no doubt of petitioner's major interest in the disposition of the larger sum received in 1940, and that the small additional sums to be paid it, including the anticipated "further very small liquidating dividend" (as respondent describes it), were employed mainly as a prop to bolster support for the adjudication which petitioner felt it needed for its own protection against bondholders' claims against it.

This, therefore, is a proceeding initiated by a wholly successful claimant against a bankrupt estate for advice as to what he should do with the funds he has claimed. To support bankruptcy jurisdiction, petitioner relies on precedents involving rival claimants against the bankrupt estate, where, of course, jurisdiction appears obvious. In re United Cigar Stores Co. of America, 2 Cir., 75 F.2d 290; United States Fidelity & Guaranty Co. v. Bray, 225 U.S. 205, 215, 32 S.Ct. 620, 56 L.Ed. 1055. But actually there was no such rivalry here, and none was developed even under the stimulus of petitioner's activities. The referee ordered notice of the petition by newspaper advertisement, as well as by mail to the holders, so far as they could be ascertained, of the old bonds *who had not filed and been allowed their individual claims*. Upon such notice, Prudence Securities Corporation, the reorganized Prudence concern, submitted a lengthy answer asserting its right to receive the funds not as obligor or successor obligor, but only as a large holder of the new bonds, and basing its claim upon the transfer or blank assignment made by the old bondholders—the ground asserted by petitioner to be the basis of the new bondholders' adverse claims made against it. But the Securities Corporation made no claim against the bankrupt whatsoever, and in its prayer specifically asked only for an order for direction of distribution as to "the funds in the hands of the petitioner." At the referee's hearing, where, in addition to the parties already named, there apparently appeared only two or three quite unpugnacious bondholders, this was made quite clear on the continued insistence of respondent, the bankruptcy trustee, that the prior settlement of the bankrupt estate should not be upset or its closing delayed, and that only involved was distribution of the funds *by petitioner*. As petitioner's own counsel put it: "Your Honor, we certainly have no intention of urging an upsetment." Further, in the district court the Securities Corporation appeared, but took no part, while petitioner's application appears to have been supported by but a single person of unidentified interest against respondent's successful opposition. Before us petitioner has been left quite alone to face respondent's strenuous insistence that granting the application will delay the impending closing of an estate and that the estate has no interest whatsoever in petitioner's disposition of the funds, and further that his appearances to state the position of the referee and the court have had to be a labor of love.

■ It seems clear, therefore, that here there is no dispute which concerns the bankrupt estate. What petitioner really desires is a declaratory judgment as to the meaning and effect of transfers or assignments made of the bonds for which it is trustee. Such a declaration will not aid, or indeed have bearing upon, the closing of this bankruptcy, but will only impede it. It is, therefore, not a matter with which the bankruptcy court should concern itself. United States ex rel. Emanuel v. Jaeger, 2 Cir., 117 F.2d 483, 486; Smith v. Chase Nat. Bank of City of New York, 8 Cir., 84 F.2d 608, 613–616; In re Railroad Supply Co., 7 Cir., 78 F.2d 530. There is lacking even the limited jurisdiction to define and explain an approved plan of reorganization which we resorted to in Bakers Share Corp. v. London Terrace, Inc., 2 Cir., 130 F.2d 157, and In re Flatbush Avenue-Nevins Street Corp., 2 Cir., Jan. 8, 1943, 133 F.2d 760, for here the only plan was that

of Prudence, not of the bankrupt New York Investors, Inc.

Petitioner, however, now relies particularly upon the provisions of the Bankruptcy Act, § 2, sub. a(2), 11 U.S.C.A. § 11, sub. a(2), giving bankruptcy courts jurisdiction to allow and disallow claims and to "reconsider allowed or disallowed claims." This power is somewhat more fully stated in sec. 57, sub. k, 11 U.S.C.A. § 93, sub. k, thus: "Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part, according to the equities of the case, before but not after the estate has been closed." The procedure to be followed—petition to the referee and hearing—is provided for in General Order 21(6), 11 U.S.C.A. following section 53. Had petitioner sought this relief, it would have faced several difficult hurdles: whether a disappointed *claimant* may pursue this remedy to establish—and hence even more doubtfully to disestablish—his claim, In re Jayrose Millinery Co., 2 Cir., 93 F.2d 471, 474; 2 Collier on Bankruptcy, 14th Ed. 1940, 1426, 1476; 3 ibid. 302, 314; whether anyone other than a bankruptcy trustee actively serving can employ the remedy or seek any relief other than disallowance or reduction (not substitutionary allowance) of the claim, ibid.; In re Jule Motor Corp., D. C.N.D.N.Y., 34 F.Supp. 742, or whether there have been such delay and laches as to operate as a bar.

If, however, "the equities of the case" should ever be reached, the obstacles would seem increased, rather than reduced. For the bankruptcy court would then be expected to establish general principles on hypothetical facts affecting individuals not before it. The small turnout of bondholders at the hearing may be noted; whether this was due to failure of the notice to reach them or lack of interest or the expectation that petitioner would continue to represent them as it had before is only speculation. Indeed, there may be question whether petitioner without more authority from the beneficiaries of its trust should change its position from one of protection to one at least of indifference, if not of substantial opposition, to their interests, or whether the new trustee of the new issue, who was not a party here, should not appear to represent the new bonds. Even more serious is the problem which arises as to the separate claims allowed and payments made to individual holders of old bonds who were not cited to appear herein. As to these, petitioner significantly said at the hearing, "Now there may be some question as to those people, which will have to be determined later." It would seem obvious that they should not receive payments denied other similar holders, that their rights should not be determined or prejudiced in their absence, and that the difficulties of trying at this late date to retrace the ground already covered as to them are serious, if not insuperable. And the effect of any attempt so to do in delaying settlement of this already eight years' old liquidation is obvious.

■ We need not be insensible to the situation in which petitioner now finds itself to believe that there are available to petitioner other courts better fitted under the circumstances to protect those specific interests which may be brought before them, and that the bankruptcy court should not, if it could, attempt to establish general principles applicable to a situation such as is here disclosed. The petition, therefore, whether seeking the declaration as to distribution of the dividends originally prayed for or the alternative now urged of reconsideration of petitioner's duly allowed claim, was properly denied.

The order appealed from is affirmed, with costs to the respondent-appellee.