BROOKLYN TRUST CO. v. KELBY et al.
In re PRUDENCE BONDS CORPORATION.
No. 163.

Circuit Court of Appeals, Second Circuit.
Feb. 16, 1943.

Writ of Certiorari Denied June 7, 1943.

See — U.S. —, 63 S.Ct. 1330, 87 L.Ed. —.

---

Cullen & Dykman, of Brooklyn, N. Y. (Jackson A. Dykman, Ralph W. Crolly, and Patrick J. Mahoney, all of Brooklyn, N. Y., of counsel), for appellant.

Geo. C. Wildermuth, of Brooklyn, N. Y., for trustees of debtor.

Charles M. McCarty, of New York City, for Prudence-Bonds Corporation (New Corporation).

Joseph Nemerov, of New York City, for Hilda S. Reese.

Samuel Silbiger, of Brooklyn, N. Y., for George E. Eddy.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Brooklyn Trust Company (which we shall call Brooklyn) brought suit in the New York Supreme Court against the President and Directors of the Manhattan Company (which we shall call Manhattan), also joining as defendants a New York company (resulting from the reorganization under Bankr.Act § 77B, 11 U.S.C.A. § 207 of Prudence-Bonds Corporation, which we shall call the debtor) and two holders of bonds of the debtor. The United States District Court for the Eastern District of New York, sitting in the bankruptcy reorganization proceeding of the debtor, entered an order restraining, temporarily, the prosecution or defense of that suit. Brooklyn appeals from that order.

1. This appeal is a chapter of a reorganization proceeding, begun some nine years ago, which has given rise to many earlier appeals. For an understanding of the present appeal, it is necessary to recite a portion of the complicated story.[1]

The debtor, over a period of some fourteen years, sold throughout the country and abroad, great numbers of its bonds, divided into eighteen separate "series," the bonds in each series being secured by separate "pools" of mortgages title to which was held by divers corporate trustees under separate trust agreements, one for each series. Each trust agreement reserved to the debtor the power to withdraw mortgages from the "pool" upon substituting other securities of equal value. The debtor, becoming financially embarrassed, filed a petition for reorganization under § 77B of the Bankruptcy Act in June, 1934. There ensued many decisions relating to the rights of the bondholders and the corporate trustees.[2]

In 1938, the bankruptcy court entered an order approving separate plans for each of the "series" of bonds and a "general" plan for the debtor, the court having found

---

[1] The record on this appeal consists of some 1300 printed pages, for it incorporates by reference the record on appeal in Central Hanover Bank v. President and Directors of Manhattan Co., 2 Cir., 105 F.2d 130, and that in Manufacturers Trust Co. v. Kelby, 2 Cir., 125 F.2d 650.

[2] To give two instances of litigation arising in the early stages of the reorganization: A bondholder in one of the pools brought suit in a New York State court (on behalf of himself and all other similarly situated bondholders) against his corporate trustee for an accounting; an order of the bankruptcy court staying the prosecution of all such suits was affirmed by this court, in an opinion saying that § 77B contemplated a plan which, if approved by the necessary number of bondholders and the court, might supersede and modify the trust agreement. In re Prudence Bonds Corp., 2 Cir., 75 F.2d 262. In another case, the corporate trustees appealed from an order of the bankruptcy court restraining them from foreclosing, selling or encumbering the pledged mortgages or distributing the cash on hand to the bondholders except upon application to the bankruptcy court; this order was affirmed in In re Prudence-Bonds Corp., 2 Cir., 77 F.2d 328, on the authority of Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & P. R. Co., 294 U.S. 648, 55 S. Ct. 595, 79 L.Ed. 1110.

that there was no "equity" for the debtor's general creditors or stockholders. Under the "general" plan, a new company was to be created; its stock was to be placed in a voting trust, all the voting trust certificates to be distributed pro rata among the bondholders; the debtor and trustees in bankruptcy of the debtor were to transfer all their interests to this new company, which was to become liable on all the bonds. Under each of the separate plans for the several "series," a separate supplemental trust agreement was to be made; each of the corporate trustees (which we shall call the old trustees) was to transfer the securities held by it to a new or successor corporate trustee. The order approving these reorganization plans reserved in the court jurisdiction to "give such further authorizations and directions as may be necessary in order to make effective, consummate and carry out, this order, the * * * plans of reorganization, and generally to determine any and all matters pertaining to these proceedings or to said * * * plans of reorganization and not determined heretofore or by this order." This order, in its entirety, was, on appeal, affirmed by this court; In re Prudence Bonds Corp., 2 Cir., 79 F.2d 205.

2. The bankruptcy court, as part of the proceedings to make effective and carry out the plans, then made an order which approved the form of the supplemental trust agreements; authorized and directed the debtor and its trustees in bankruptcy to assign all their right, title and interest in the collateral in the trust funds to the new company; authorized and directed the old corporate trustees to deliver their respective trust funds to the new corporate trustee under the supplemental trust agreements; designated a particular trust company as the new corporate trustee; and "authorized and directed" each of the old corporate trustees to file "in this proceeding" an account of its acts as trustee and to make application to the bankruptcy court for the judicial settlement of those accounts so that, after a hearing, such accounts should be "settled herein," the order expressly providing that the "authorization and direction to account * * *" should "not be prejudiced" by the fact that the old trustees were directed to turn the trust funds over to the new trustee "in advance of such accounting."

None of the old corporate trustees ever objected to the order to account.[3] On the contrary, each of them, during the months of August and September, 1938, filed in the bankruptcy proceeding a purported accounting of its conduct as trustee from the inception of its trusteeship up to and subsequent to the date of the bankruptcy proceedings; and each old trustee also then filed a petition praying that the court judicially settle its account, releasing and discharging it from all responsibility as trustee, after a hearing given to all persons interested in the estate of the debtor, and for an order perpetually enjoining "all persons, firms and corporations from instituting or prosecuting or continuing the prosecution" of any suits including all suits then pending with respect to the trust agreements "or with respect to any matters contained in said accounts." Pursuant to these petitions, the court entered orders that objections to such accounts be filed on or before a fixed date, and that hearings be held on subsequent named dates at which all parties to and intervenors in the bankruptcy proceedings, all creditors and stockholders of the debtor, and all other persons interested in the debtor's estate, should show cause why the orders sought by the old trustees should not be made. Such notices were then given.[4]

3. As the new corporate trustee, City Bank Farmers Trust Company, designated by the court was a trust company which had itself been an "old trustee" for some of the series, each of the supplemental trust agreements provided, at the instance of that trust company, that the new corporate trustee should "not be required to institute any actions, legal or equitable, against any of its predecessors as trustees under the

---

[3] There are several indications that, from an early date in the bankruptcy proceedings, the trustees contemplated that they would thus account in the bankruptcy proceedings and that, in effect, they invited the order authorizing and directing them thus to file their accounts. For instance, in a brief filed in 1935 by all the old corporate trustees, including Manhattan and Brooklyn, in the appeal in the case of In re Prudence-Bonds Corp., 2 Cir., 77 F.2d 328, they said that "if a plan of reorganization is approved * * * presumably the Trust Companies will be required to account in the bankruptcy court for their acts as trustees under the respective trust indentures."

[4] In the case of Manhattan, objections were to be filed on or before October 18, 1938 and the hearing on the order to show cause was set for October 28, 1938.

original trust agreement." That clause was, of course, not intended to release the old corporate trustees from any such claims; provisions of each of the supplemental trust agreements and of the court's order show that any such claims against the old trustees which, except for that clause, the successor trustee would have been obliged to pursue, were vested—derivatively and for the benefit of the respective trust funds—either in the new company or the bondholders.[5]

When, in May 1938, the debtor and its trustees in bankruptcy, pursuant to the court's order, transferred all their interests in the trust funds to the new company, neither the new company nor the trustees in bankruptcy nor the court were aware of any wrongful acts on the part of the old corporate trustees. Subsequently, the new company and the debtor's trustees in bankruptcy asked the court for an extension of time in which to file objections to the accounts of the old corporate trustees, advising the court that they had just learned of facts which indicated that each of the old corporate trustees had, from time to time, negligently permitted the debtor, in the years before the bankruptcy, to withdraw collateral from the trust funds in violation of the trust agreements, without substitution of new securities of equal value, thereby depleting, as to each trust, the trust fund or res.

Some of the old trustees (all of whom had theretofore been eager for a complete adjudication, in the bankruptcy proceedings, of their respective liabilities) now shifted their position and questioned the court's jurisdiction with respect to such alleged misconduct; others of those old trustees, however, took a different view. The court held that it had no jurisdiction in so far as the claims against the old corporate trustees arose out of improper conduct prior to the bankruptcy in which the debtor had participated, and entered an order to that effect. One of the old corporate trustees was dissatisfied with that limitation and appealed to this court from that order; all the other old trustees (including Brooklyn, as old trustee for the Eighth Series, and Manhattan, as old trustee for the Fifth Series) joined in the appeal either as appellants or appellees.[6] On that appeal, it was urged in support of the order that the claims against the old corporate trustee of which the lower court had refused to take jurisdiction were the personal claims of individual bondholders and were no part of any assets with which the bankruptcy court could concern itself, especially as the debtor itself had participated in the wrongs which gave rise to those claims and was so hopelessly insolvent that it had no "equity" in any property. In Central Hanover Bank & Trust Company v. President, etc., of Manhattan Company, 2 Cir., 105 F.2d 130, this court reversed the order. Our opinion (per L. Hand, J.) held that the bankruptcy court had jurisdiction on the following grounds: A reorganization plan under § 77B may deal with property securing the debtor's obligations even if, for any reason, the debtor no longer has an interest in such property; accordingly the court had jurisdiction of any assets which were part of the trust funds securing the debtor's bonds; the claims against the old corporate trustees did not run to the bondholders individually but were for restoration of the trust funds and were thus parts of those funds; consequently the bankruptcy court had jurisdiction of those claims.

4. On the coming down of the mandate, the bankruptcy court, on July 12, 1939, entered an order decreeing that "to make effective, consummate and carry out the plans," it took "full and exclusive jurisdiction" of all the claims against the old corporate trustee, of which it had previously denied jurisdiction. The order provided that any such claims against those old trustees respectively (described as "objections" to the accounts filed by those trustees) made by the new company or the trustees in bankruptcy would be deemed to be made on behalf of the bondholders for restoration of the respective trust funds; it authorized bondholders to join in such claims; it continued its earlier order staying all suits in other courts by bondholders against the former trustees; and it referred the claims for hearing to a special master.

To the several accounts of the old trustees, objections were then filed by the new

---

[5] So far as it might be argued that those causes of action were not thus transferred, obviously they were still subject to the orders of the bankruptcy court either through control of the old trustees or of the debtor's trustees in bankruptcy or otherwise.  Cf. Manufacturers Trust Co. v. Kelby, 2 Cir., 125 F.2d 650.

[6] Brooklyn and Manhattan were appellees, each being satisfied with and defending the order.

company, the debtor's trustees in bankruptcy and certain of the bondholders. When these objections came on to be heard by the special master, each of the old trustees asserted that it was not a trustee but merely a depositary;[7] that the asserted claims, if any, belonged exclusively to the bondholders individually and were not for restoration of the respective trust funds; that those individual claims belonged only to those persons who had been bondholders at the times when the alleged wrongs were committed;[7a] and that, in any event, they were barred by the statute of limitations. On exceptions to the master's rulings, the court made an order rejecting all these contentions and directing these restoration actions to proceed.

5. Appeals from this order were taken by Brooklyn and the Manufacturers Trust Company, one of the old trustees. The appeal of Brooklyn was, at its request, held in abeyance, pending the outcome of the Manufacturers Trust Company's appeal; but the attorneys for Brooklyn, Manhattan and four other of the old corporate trustees filed a brief amicus curiae in support of the appeal of the Manufacturers Trust Company. On that appeal, this court affirmed the order; Manufacturers Trust Company v. Kelby, 2 Cir., 125 F.2d 650, 652. Our opinion (per L. Hand, J.), after carefully canvassing the New York decisions, held that each of the trust agreements created an express trust; that, if the allegations were proved, each of the old trustees was liable and the claims were not barred by the statute of limitations; that no individual bondholder could have an individual recovery for such wrongs, but that such a bondholder's right of action was one "to restore the res" and must be "regarded as part of the res itself"; that a holder of a bond who had sold and assigned his bond without knowledge on the part of the seller or buyer at the time the sale of any wrongdoing by the trustee has no "standing to complain of a surrender of a part of the res made before the assignment"; and, that, even if a former bondholder or assignor of a bond could bring suit complaining of such a depletion or surrender of the trust res and should recover, "equity should on the plainest principles impress the recovery with a constructive trust in favor of the assignee who supposed he was buying the surrendered security for which the recovery is the substitute." The opinion concluded with a discussion of the question of the standing of divers persons to appear and object to the accounts of the old trustees. We said that it was not improper to allow both the bondholders and the new company to appear, "so that there can be no question that that party shall be before the court who is vested with the right"; and, our previous discussion showed that this right, urged by either the bondholders or the new company, was derivative and for the benefit of the respective trust funds.[8]

From that decision, Manufacturers Trust Company sought certiorari, Brooklyn and Manhattan each paying a proportionate part of the fee of the counsel who filed the certiorari petition.[9] That petition asked reversal not only of our decision in the Manufacturers Trust case but also of our previous decision, as to jurisdiction, in the Central Hanover case. On June 1, 1942, the Supreme Court denied certiorari, 316 U.S. 697, 62 S.Ct. 1293, 86 L.Ed. 1766.

6. Since, despite our earlier decisions in the Central Hanover and Manufacturers Trust cases, the appellant on the present appeal again raises the question of the jurisdiction of the bankruptcy court over the restoration actions, it is desirable here to restate, somewhat more amply, our

---

[7] This despite the fact that each of those trustees had theretofore in the bankruptcy proceedings insisted that it was in all respects a trustee.

[7a] As most of the bonds were bearer bonds, this meant that any substantial recoveries would be highly unlikely, for it would be practically impossible, in most cases, to discover who owned bonds when any particular violation of the trust agreement occurred.

[8] We added that there seemed to be little reason for an appearance by the debtor's trustees in bankruptcy, but that no harm would be done by allowing them and a bondholders' "advisory committee" to appear.

[9] Cf. cases to the effect that a person who is not a defendant of record and not "in privity" with a party to the action may subject himself to being concluded by way of res judicata, if openly and actively, in respect to some interest of his own, he participates and helps to finance the defense of the action. Souffront v. La Compagnie des Sucreries De Porto Reco, 217 U.S. 475, 30 S.Ct. 608, 54 L.Ed. 846; Van Kannel Revolving Door Co. v. Winton Hotel Co., D.C., 263 F. 988; Elliott Co. v. Roto Co., 2 Cir., 242 F. 941; 34 C. J. 977 note 60, and 1006 note 83.

reasons for sustaining its jurisdiction: One of the primary purposes of a reorganization proceeding under § 77B (as distinguished from ordinary bankruptcy) is to bring about an adjustment of secured debts.[9a] The jurisdiction to confirm a reorganization plan therefore extends to property securing obligations owing to secured creditors even if the debtor no longer has an "equity" in that property.[10] As the court has jurisdiction of such property, it also has jurisdiction of trustees who are holding it for the secured creditors. Nor is this jurisdiction left to inference: Under § 77B, sub. b(9) a plan "shall provide adequate means for" its "execution" which means "may include * * * the satisfaction or modification of liens, indentures, or other similar instruments"; and § 77B sub. h provides that, upon confirmation of a plan, the court may direct "the trustee of any obligation of the debtor * * * to make" any necessary transfer or conveyance of any property dealt with by the plan. Necessarily, those powers include the power to direct such a trustee to convey the trust property to a new trustee; it follows that to require a full accounting for that trustee's earlier conduct with reference to such trust property is an inherent part of the judicial administration of the estate in the court's legal custody, for it is necessary, in order to see to it that the plan is fully carried out, to ensure that the new trustee for secured creditors receives all the trust funds.[11] The exercise of the court's power to compel such an old trustee to restore trust assets, lost by its negligent conduct, concerns the res itself[12] and is, therefore, quasi in rem. Princess Lida v. Thompson, 305 U.S. 456, 462, 465, 466, 59 S.Ct. 275, 83 L.Ed. 285; Mandeville v. Canterbury, 63 S.Ct. 472, 87 L.Ed. ——. The claim for restitution is part of the estate within the court's jurisdiction; the old trustee's liability is as much a part of the res to be administered as any other part; to make the old trustee account is as much the court's duty as to make it turn the securities in its possession over to the new trustee. Consequently, in the case at bar, the old corporate trustees were parties to the reorganization proceeding and not "adverse claimants"; since they were not "adverse claimants," there was no need to bring plenary suits against them,[13] although, as we said in the Central Hanover case, 2 Cir., 105 F.2d 130, 132, the bankruptcy court, in its discretion, could have directed the bringing of such plenary suits.[14] But

[9a] § 77B, sub. b(1) provides that a plan of reorganization "shall include provisions modifying or altering the rights of creditors generally, or any class of them, secured or unsecured * * *."

[10] Case v. Los Angeles Lumber Co., 308 U.S. 106, 125, 126, 60 S.Ct. 1, 84 L.Ed. 110; In re 620 Church St. Corp., 299 U.S. 24, 57 S.Ct. 88, 81 L.Ed. 16; Continental Ill. Natl. Bk. v. Chicago R. I. & P. R. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; In re Central Funding Corp., 2 Cir., 75 F.2d 256; In re Mortgage Sec. Corp., 2 Cir., 75 F.2d 261; In re Prudence Bonds Corp., 2 Cir., 75 F.2d 262; In re Nine North Church St., Inc., 2 Cir., 82 F.2d 186, 189; cf. McCandless v. Furlaud, 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121.

[11] We need not consider whether the provisions of § 77B, sub. b(10) as to enforcing an accounting under "trust indentures" is applicable in such circumstances.

[12] Cf. Alexander v. Hillman, 296 U.S. 222, 237, 238, 56 S.Ct. 204, 80 L.Ed. 192.

[13] Even if they had been "adverse claimants," the court would have had jurisdiction over them for, by not objecting to the accounting order and by themselves petitioning for an adjudication of their liabilities as trustees in the bankruptcy proceeding, they severally consented to the court's jurisdiction, and, under § 23, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 46, sub. b, the court thus obtained jurisdiction regardless of the absence of diversity of citizenship. Schumacher v. Beeler, 293 U.S. 367, 371, 55 S.Ct. 230, 79 L.Ed. 433. Perhaps for that reason none of the old trustees, including Brooklyn and Manhattan, has ever, even on the present appeal, suggested that the actions against them should have been by "plenary" suits.

An additional argument, which we need not consider, runs thus: The court, under § 77B, sub. a is vested with all the powers which a federal court would have if it had appointed an equity receiver so far as consistent with the other provisions of § 77B; cf. Case v. Los Angeles Lumber Co., 308 U.S. 106, 126 note 22, 60 S.Ct. 1, 84 L.Ed. 110. Therefore Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192, is applicable in all respects, and the old trustees, by seeking an adjudication of their liabilities, subjected themselves to actions in the bankruptcy proceedings for recovery of any part of the res.

[14] Our opinion in that case ended thus: "We conclude therefore that the district court has jurisdiction over the claims,

no matter where brought, and whether or not each such restoration action be considered as a suit against one of the old trustees or as a suit begun by its own petition for adjudication of its liabilities, in any event the claims asserted against it were part of the trust fund or res in the custody and entitled to the protection of the reorganization court.[15]

7. On June 2, 1942, the day after the Supreme Court denied certiorari in the Manufacturers Trust case, Brooklyn dismissed its appeal. Meanwhile, several of the old trustees had been heard by the special master and, on June 18, 1942, he announced that he would hold a hearing on June 25 to determine which of the remaining accounting actions, including those against Brooklyn and Manhattan, would be tried next. At the request of Manhattan's counsel, this hearing was, on June 22, adjourned for a week in order that he might confer with counsel for some of the other old corporate trustees.

Then, without notifying the master or the bankruptcy court, or conferring with anyone concerned with the claims against Manhattan, other than Manhattan itself, Brooklyn in this period of adjournment—as testamentary trustee of the estate of one Susanna Coffin, and obviously by pre-arrangement with Manhattan—began an action, on June 24, in the New York Supreme Court against Manhattan as the old trustee of the Fifth Series of the debtor's bonds. In that action Brooklyn also joined as defendants the new company and Eddy and Reese, the only holders of Fifth Series bonds who had filed objections and who were participating in the hearings before the special master of the claims against Manhattan as old trustee for that series.

The complaint in that state court suit alleged that the Coffin estate had owned a $1,000 Fifth Series bond but had sold it in 1932 [some two years before the debtor's bankruptcy] for $515; but no allegation was made and none even intimated that the sale at that price was due to the fact that the Coffin estate or the buyer or anyone else knew at the time of that sale in 1932 of any violation of the trust agreement or of any improper depletion of the trust fund. The complaint alleged that the Coffin estate had been damaged by the conduct of Manhattan in permitting the debtor, at a time when that estate still owned the bond, to withdraw pledged mortgages not in default while other mortgages were in default, in violation of the trust agreement. It also alleged that the new company and the two bondholders, who were joined as defendants, "have asserted and are asserting" in the bankruptcy proceeding "the right to maintain or prosecute class or representative claims for relief or causes of action against" Manhattan, for the very acts on which the state court suit was based, "on behalf of present and future Fifth Series bondholders * * *" and that those defendants were seeking a decree in the bankruptcy proceeding which would provide that any monies recovered from Manhattan should "be added to and become a part of the collateral securing the payment of" the bonds outstanding "at and after the time of such recovery and for the exclusive benefit of the then existing and future bondholders." It further alleged that the plaintiff and other persons who had sold their bonds before the bankruptcy proceedings began were not parties to the proceedings in bankruptcy or to the proceedings therein to settle the accounts of Manhattan; and that the success of the efforts of the defendants, the new company and the objecting bondholders, in the "accounting" proceeding "may defeat or impair and prejudice plaintiffs' right to the relief and recovery sought herein, to its injury, detriment and loss." The complaint not only asked for a money judgment against Manhattan but also that "the plaintiff have *such*

---

and may, if it sees fit, include them in the accountings. It does not follow that it will prove more convenient to do so. The judge did not pass on that question. When the case goes back, he will be free to choose that forum which he thinks will best serve the interests of all, and it is unlikely that there will be any ground for disturbing his choice."

15 Cf. Steelman v. All Continent Co., 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085; Alexander v. Hillman, supra.

As the issues related to the past conduct of the trustees and to essential items relating to the carrying out of the plan, there is no room for the application of the doctrine of such cases as Bakers Share Corp. v. London Terrace, Inc., 2 Cir., 130 F.2d 157; In re Flatbush Avenue-Nevins Corp., 2 Cir., 133 F.2d 760, January 8, 1943; and Central Hanover Bank & Trust Company v. Kelby, 2 Cir., 133 F. 2d 873, January 29, 1943.

*other and further relief as may be just and equitable."* [16]

8. On the petition of the new company and debtor's trustees in bankruptcy, the court below entered an order restraining the parties to the state court suit from continuing its prosecution or defense "until after the final decree in the" bankruptcy pro-

---

[16] Emphasis added.

Pertinent allegations are:

"Defendants, other than defendant President and Directors of the Manhattan Company, are made parties defendant to this action for the sole reason that they have asserted and are asserting claims adverse to that of the plaintiff herein, which claims, if sustained, may defeat or impair and prejudice the plaintiff's right to relief and recovery sought herein to its injury, detriment and loss * * *

"All of the property of said Company which secured the payment of said Fifth Series bonds, was transferred and conveyed to the defendant Prudence-Bonds Corporation (New Corporation) as follows:

"(a) Pursuant to an order of said Court, dated April 27, 1938, said Charles H. Kelby and Clifford S. Kelsey, as trustees of said Company, by an instrument in writing, assigned and conveyed to the defendant Prudence-Bonds Corporation all of their right, title and interest in and to the collateral deposited or pledged to secure said Fifth Series bonds.

"(b) On or about May 19, 1938, pursuant to the confirmed plans of reorganization and said order dated April 27, 1938, the defendant Prudence-Bonds Corporation and City Bank Farmers Trust Company executed an agreement, dated as of March 1, 1938, in respect of said Fifth Series bonds.

"(c) Pursuant to said order of said Court, dated April 27, 1938, the defendant President and Directors of the Manhattan Company, turned over to said City Bank Farmers Trust Company, under said agreement for the Fifth Series bonds, all the collateral then held by it under said agreement which formerly secured said Fifth Series bonds.

"Pursuant to said order of said Court, dated April 27, 1938, the defendant President and Directors of the Manhattan Company, on or about the 8th day of September, 1938, filed in said Court an account of its acts and proceedings under said agreement, described in paragraph Third hereof, from the date of execution of said agreement.

"On October 2, 1939, objections to said account of said defendant were served and filed by the defendants George E. Eddy and Hilda S. Reese (each of whom is the holder of a bond or bonds of said Fifth Series) on behalf of themselves and allegedly on behalf of the other bondholders of said Fifth Series, and by the defendant Prudence-Bonds Corporation allegedly on behalf of the bondholders of said series.

"Said defendants have asserted and are asserting the right to maintain or prosecute class or representatives claims for relief or causes of action against said defendant President and Directors of the Manhattan Company, for its acts and proceedings alleged in paragraph Seventh hereof, on behalf of present and future Fifth Series bondholders, although many, if not most of them did not become such bondholders until after the occurrence of such acts. Said defendants claim and assert and are seeking a decree from said Court providing that any sum or sums of money recovered from said defendant President and Directors of the Manhattan Company, because of, among other acts, those committed by it between January 18, 1926, and March 28, 1932 (when the decedent Susanna E. Coffin and her estate were the owner of said Fifth Series bond), will not be payable to or in any way enure to the benefit of the plaintiff and other bondholders of said series who owned bonds during the time said acts, or some of them, occurred and who thereafter sold and assigned their bonds, and that such bondholders will not be entitled to receive or recover any part of such sum or sums, but that any and all sums recovered from said defendant on account of such acts should be added to and become a part of the collateral securing the payment of the modified Fifth Series bonds at and after the time of such recovery, and for the exclusive benefit of the then existing and future bondholders of said series, many, if not most, of whom were not such bondholders when such acts on the part of said defendant occurred and for the possible benefit of other parties who are not bondholders of said series.

"Plaintiff and other holders of said Fifth Series bonds while such acts, or some of them, on the part of said defendant occurred, and who thereafter sold and assigned their bonds prior to the institution of the 77B reorganization proceeding by said Prudence-Bonds Corporation, were not parties to said proceeding or to said proceeding to settle the account of said defendant President and Directors of the Manhattan Company in the United States District Court for the Eastern District of New York, since they were

ceedings "for the judicial settlement of the accounts" of the old trustees. That order is the subject of this appeal.

9. Brooklyn, which, in its capacity as plaintiff in the state court suit, is appellant here, asks us to deal with this case precisely as if the facts were these: A trust company, which is not one of the old trustees, and which is therefore in no way involved in the restoration actions pending in the bankruptcy proceeding, is the trustee under a trust instrument which happens to be identical in terms with that under which Manhattan was an old trustee; that trust company is sued in a New York court, by a former bondholder, for wrongful conduct of the very same kind for which Manhattan is alleged, in the restoration action in the bankruptcy proceeding, to have been guilty; the bankruptcy court enjoins the parties to the state court suit solely because it fears that the New York court will render a judgment on grounds inconsistent with our decisions in the Central Hanover

Bank and Manufacturers Trust cases, and is apprehensive that, under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, we will be obliged to reverse our former rulings.

Of course, if those were essentially the facts here, the injunction order would have been fatally erroneous. Under § 265 of the Judicial Code, 28 U.S.C.A. § 379,[17] the lower court could not properly have restrained a suit which was in no way related to proceedings before it except via Erie R. Co. v. Tompkins.[18] But this picture of the nature of the actual state court suit begun by Brooklyn is importantly inaccurate. The outstanding fact which distinguishes the actual from that suppositious state court case is that Brooklyn, the plaintiff in the actual suit, has joined the new company and the complaining bondholders who are seeking to aid in restoring the corpus of the trust fund or trust res in the quasi in rem action against Man-

not creditors of said Prudence-Bonds Corporation when either of said proceedings was instituted, or thereafter.

"That, if an order or decree such as said defendants seek be made by said Court, which would provide that any recovery against the defendant President and Directors of the Manhattan Company, based on such acts, would be added to the collateral securing the Fifth Series bonds and for the benefit of the then and future bondholders of said series, and for the possible benefit of other parties not bondholders thereof, it might defeat or impair and prejudice plaintiff's right to the relief and recovery herein sought to its injury, detriment and loss.

"Said Court has determined in two similar cases, on the accountings by Manufacturers Trust Company with respect to the Twelfth Series of said Prudence Bonds, and Brooklyn Trust Company with respect to the Eighth Series of said Prudence Bonds, that any such future recoveries that may be obtained against either of these trust companies, based on acts alleged to be similar to those of the defendant President and Directors of the Manhattan Company, as hereinbefore set forth, should be added to the collateral securing the payment of the bonds of each of said series for the benefit of the then bondholders and future bondholders of said series, and possibly for the benefit of other parties not bondholders thereof. The decision of said Court in the Manufacturers Trust Company case was affirmed by the United States Circuit

Court of Appeals for the Second Circuit and a petition for a writ of certiorari to said Circuit Court was denied by the United States Supreme Court. Said decisions do not conform to or follow the law of the State of New York, as they should have and must, but are directly opposed thereto, and the courts of the State of New York are in no wise obliged to recognize or follow such decisions.

"Wherefore, plaintiff demands judgment (1) directing said defendant President and Directors of the Manhattan Company to pay to the plaintiff any sum for which defendant is adjudged to be liable to it, together with the costs and disbursements of this action; and (2) that the plaintiff have such other and further relief as may be just and equitable."

[17] That section reads: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

[18] It is not altogether certain that Erie R. Co. v. Tompkins would be applicable in such a case as this where the federal action is, in effect, in equity and not based on diversity of citizenship jurisdiction. Cf. Russell v. Todd, 309 U.S. 280, 287, 60 S.Ct. 527, 84 L.Ed. 754; D'Oench, Duhme v. F. D. I. C., 315 U.S. 447, 467, 62 S.Ct. 676, 86 L.Ed. 956, and note 3; Palmer v. Hoffman, U.S. (February 1, 1943).

hattan previously pending in the bankruptcy court. If, as Brooklyn argues in its briefs here, its purpose as plaintiff in the state court action was merely to obtain a money judgment against Manhattan and in no way to interfere (except such interference as might result via the Erie R. Co. v. Tompkins doctrine) with the action against Manhattan in the bankruptcy court, then Brooklyn's joinder of the new company and those two bondholders is inexplicable. Brooklyn's true purpose is glaringly illuminated (1) by its allegations, as plaintiff in that suit, that the new company and those objecting bondholders are made defendants because, if the federal court in the action against Manhattan were to decree that any recovery therein should be added to the trust fund that federal court decree "might defeat or impair and prejudice" the plaintiff's right to recover in the state court suit, and (2) by its prayer in that suit for equitable relief. No harm to the Coffin estate could conceivably come about from the federal action if all that Brooklyn wanted in its suit were a money judgment against Manhattan. It is plain beyond a doubt that what Brooklyn seeks is a decree by the state court against the new company and the two bondholders—a binding, judicial determination, quasi in rem, of their status, to the effect that they have no right to assert in the action pending in the federal court any claim on behalf of present or future bondholders for restoration by Manhattan to the corpus of the trust fund on account of wrongs done by Manhattan while Mrs. Coffin or her estate was still a bondholder. Clearly, such a judicial determination by the state court would seriously interfere with the jurisdiction of the bankruptcy court in the restoration action against Manhattan.

■ That interference has nothing to do with Erie v. Tompkins; it would have been an interference if Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, were still alive and kicking. The injunction order was proper solely because of the nature of the relief sought in the state court suit and of the nature of the action against Manhattan pending in the bankruptcy proceedings. Here we encounter a well-recognized exception to the "sweeping command" of § 265. "The principle, applicable to both federal and state courts, that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted. It applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature, where, to give effect to its jurisdiction, the court must control the property." [19]

■■ Where a trust fund is involved, the Supreme Court has made this distinction:[20] If, in either of the two suits, the issue is merely the establishment of an interest in the fund, then the court in the suit first begun lacks power to restrain the prosecution of the second suit. But such power exists where there is in issue in both suits "the restoration of the corpus of the trust"—as, for instance, the obligation of the trustee to restore to the fund a portion of the fund which was lost by the trustees' negligent conduct; for then "the two suits are in rem or quasi in rem"; and, if both suits are of that character, "so that the court * * * has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought, the court first acquiring jurisdiction or assuming control of such property is entitled to maintain and exercise its jurisdiction to the exclusion of the other." That is the situation here: The action against Manhattan in the bankruptcy court is quasi in rem since it relates to the restoration by Manhattan, a trustee, of a portion of a trust fund; and the subsequent suit in Brooklyn is also quasi in rem as to the same res since part of the relief sought is an adjudication (with appropriate accompanying

[19] United States v. Bank of New York, 296 U.S. 463, 477, 56 S.Ct. 343, 347, 80 L.Ed. 331; Farmers' Loan & Trust Co. v. Lake St. Elevated R. Co., 177 U. S. 51, 61, 20 S.Ct. 564, 44 L.Ed. 667; Kline v. Burke Construction Co., 260 U. S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Continental Ill. Bank & Trust Co. v. Rock Island R. Co., supra; cf. Toucey v. New York Life Ins.

Co., 314 U.S. 118, 134–136, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967.

We need not consider whether §§ 2(15) and 116(4) of the Bankruptcy Act, 11 U. S.C.A. §§ 11(15), 516(4), add to the scope of this well-recognized exception.

[20] Princess Lida v. Thompson, 305 U. S. 456, 466, 467, 59 S.Ct. 275, 83 L.Ed. 285; Mandeville v. Canterbury, U.S., (February 1, 1943).

116.

relief) that Manhattan as trustee is not required to make such a restoration of that same trust fund.[21] Accordingly, the court below did not err in issuing its restraining order.[22]

Appellant seems to argue that the restoration action against Manhattan in the bankruptcy court is not quasi in rem because it does not relate to a res, on the ground that it merely seeks a money decree "in personam" against Manhattan as trustee, and that a "right" which is "in personam" cannot be a "res." That is a mistaken notion, based on a play upon the unfortunate vagueness of the Latin word "res,"[23] a vagueness which would be even more apparent if the word were Englished (or Americanized) and called a "thing." But no matter how inadequate "res" may be as a descriptive label, it is not true that a money claim "in personam" cannot be a "res." It seems clear, for instance, that in a suit "quasi in rem" under § 57 of the Judicial Code, 28 U.S.C.A. § 118, an "in personam" money claim of Jones against Smith (such as a promissory note or open account liability of Smith "owned" by Jones) can be a res if a third person, Robinson, is seeking to enforce a lien upon it.[24] If one of the old corporate trustees here, recognizing and acknowledging its liability for its misconduct, had put in the trust fund its own promissory note for the amount of that liability, then a suit on that note brought by a successor trustee (or by the new company or bondholder derivatively) against the old trustee, would have been a suit relating to the trust res as much as would be a suit on a note of a third person if that note was originally part of the trust fund. It makes no difference that here the old trustees did not give such notes; the obligations of each of them to restore the corpus of its trust funds was, in just the same way, a portion of the trust res.

9. Even if Manhattan were the only defendant in the state court action, it might perhaps be argued that the federal court would have power to restrain that suit on the following ground: In the Manufacturers Trust case, we said that, if an assignor could recover from the trustee, equity would impress a constructive trust on the recovery for the benefit of the assignee, and that the assignee's resulting recovery from the assignor would be for the benefit of and part of the trust fund or res of which the federal court has jurisdiction. However, we need not and do not consider that argument here.

10. Neither Manhattan, nor Brooklyn, nor any of the other old trustees has ever suggested that the bankruptcy court, instead of accepting the invitations of the old trustees to adjudicate their liabilities in the bankruptcy proceedings, should, in the exercise of its *discretion,* direct that plenary suits against them be brought in the state court, thereby leaving it to the state court to determine the applicable New York rules of decision. However, it might be urged that the action brought by Brooklyn in the state court is such a suit and that, on that ground, a proper exercise of the federal court's discretion requires that that suit should not be restrained. But none of the cases in which the Supreme Court has said that federal courts should, for that purpose, encourage (or allow to go unmolested) state court litigation[25] has involved a federal suit in which the federal

---

[21] That is, is not required to restore so much thereof as equals the damage to the Coffin estate alleged to have resulted from the trustee's improper conduct.

[22] If the bankruptcy court had directed a plenary suit to be brought against Manhattan in another federal court or a state court, the court in that suit would have had the power to enjoin the subsequent suit brought by Brooklyn. Perhaps the bankruptcy court also then would have had that power; cf. Steelman v. All Continent Co., 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085.

[23] Thus it is difficult to perceive a res in Looney v. Eastern Texas R. Co., 247 U.S. 214, 38 S.Ct. 460, 62 L.Ed. 1084; to be sure, there the injunction was not permanent; but no more is the order here.

[24] See, e. g., Thompson v. Terminal Shares, 8 Cir., 89 F.2d 652, cert. den. 302 U.S. 735, 58 S.Ct. 121, 82 L.Ed. 568, and Thompson v. Murphy, 8 Cir., 93 F.2d 38, as to a lien on accounts owing to a non-resident defendant; Omaha National Bank v. Federal Reserve Bank, 8 Cir., 26 F.2d 884; Rensselaer & S. R. Co. v. Irwin, D.C., 252 F. 921; cf. Spellman v. Sullivian, D.C., 43 F.2d 762, affirmed 2 Cir., 61 F.2d 787; United States v. Bank of New York Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331.

[25] See, e. g., Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Gilchrist v. Interborough Rapid Transit Co., 279 U.S. 159, 49 S.Ct. 282, 73 L.Ed. 652; Foust v. Munson Lines,

court first obtained jurisdiction of a res and where a subsequent state court suit would involve an interference with the jurisdiction of the federal court.[26]

11. But even if we were to assume that, in such a case as this, a federal court should not restrain but should encourage a state court suit which will yield state court rulings on important issues involved in a suit pending in the federal court, nevertheless the restraint here would not be improper, for, in the suit brought by Brooklyn, the issues involved in the bankruptcy restoration action are presented to the state court in a manner and in circumstances which make it unlikely that state court rulings could be helpfully obtained. This appears from the following:

(a) Brooklyn, as plaintiff in that state court suit, has carefully so worded the complaint that the issues involved in the action against Manhattan in the bankruptcy court are not at all adequately stated. In the first place, the state court complaint strives to make it appear that Manhattan was a mere depositary and not a trustee. In the second place, in the federal action, it is charged that Manhattan improperly permitted the debtor to withdraw cash without substituting other securities of equal value, while, in the state suit it is alleged that there were substituted cash or securities "equal in amount or value" to those withdrawn and that the violation of the trust agreement consisted merely of the fact that mortgages not in default were withdrawn while others were in default.

(b) Moreover, the petition of the new company asking the bankruptcy court to issue the injunction order, included, as allegation No. 60, the following: "The state court action has not been instituted in good faith by Brooklyn Trust Company to recover money or property for the benefit of the Estate of Susanna Coffin for which it is trustee, but for the purpose of determining, or defeating any liability to which Brooklyn Trust Company may be subject in these [the bankruptcy] proceedings by reasons of the acts complained of in the objections herein to its account as Trustee of Prudence Bonds, Eighth Series." When that petition came on for hearing, the petitioner, in order to prove the truth of the allegations of its petition, had in court, under subpoena, Brooklyn's officer, Clark, who had sworn to the state court complaint; the new company also had had issued and served on Brooklyn a subpoena duces tecum to produce all its

---

299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49; cf. Toucey v. New York Life Ins. Co., 314 U.S. 118, 134-136, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967.

[26] Com. of Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166, and Penn Casualty Co. v. Com. of Pennsylvania, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850, are not in point, for in each of those cases a state official, not a private person, was seeking, under a comprehensive and adequate state statute, to liquidate in a state court a domestic corporation (in one instance a building and loan association and in the other an insurance company) equity receivers for which had previously been appointed by a federal court. Thus in Pennsylvania v. Williams, the Supreme Court said that the question was not the ordinary one "of comity between a federal and a state court, each asserting jurisdiction over the same subject-matter and the same property and where there are shown no special reasons addressed to the discretion of the court first acquiring jurisdiction for relinquishing its jurisdiction in favor of the other. * * * Here no state court is asserting jurisdiction, but the state officer, charged by the statutes of the state with the duty of supervising its own building and loan associations and of liquidating them by an adequate procedure when insolvent, asks to proceed with the liquidation. * * * A court of equity, which in its discretion may refuse to protect private rights when the exercise of its jurisdiction would be prejudicial to the public interest * * * or deny relief upon performance of a condition which will safeguard the public interest and secure substantial justice to the complainant * * * would seem bound to stay its hand in the public interest, where it reasonably appears that the private right will not suffer. It is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy. * * * It has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of the domestic corporation of the state. * * * There are stronger reasons for adopting a like practice where the exercise of jurisdiction involves an unnecessary interference by injunction with the lawful action of state officers." [294 U.S. 176, 55 S.Ct. 384, 79 L.Ed. 841, 96 A.L.R. 1166.]

papers relating to that suit. But, at that hearing, Brooklyn's counsel said: "Mr. Clark is here under subpoena. We are admitting the allegations of the petition. It does not seem to me at all necessary or proper to call witness to prove what we admit." Pursuant to that admission, the court ruled that it would hear no testimony. In those circumstances, we must assume that, had petitioner offered testimony, allegation No. 60 would have been proved to be true.[27]

(c) Before the injunction issued, Manhattan had served on Brooklyn a motion to dismiss the second amended state court complaint and had prepared a legal memorandum which it intended to file in support of that motion. The statute of limitations, vigorously pressed in this court and the United States Supreme Court by the old trustees, including Manhattan,[28] is not so much as mentioned in that memorandum. It is fairly obvious, then, what Brooklyn and Manhattan wanted to accomplish in that suit and why: On the one hand, Manhattan, as defendant, wanted to lose the case on the issue as to whether a former owner of a bond, as distinguished from a present holder, could recover. On the other hand, Brooklyn, the plaintiff, so contrived its pleadings that there would not be before the state court the issue of any very serious negligence on the part of Manhattan; in other words, the suit was so devised that the plaintiff was not vigorously pressing the claims against Manhattan in the same way that they were being pressed in the action in the bankruptcy court. Appellees in their briefs filed in this court assert, and appellant in its briefs here does not deny, that the two banks hoped that the state court would refuse to dismiss the complaint on Manhattan's motion, whereupon Manhattan, by way of answer, would then plead the statute of limitations, hoping then to win on that defense.[29] Were those efforts successful, there would be two state court rulings binding upon the new corporation and upon the defendant bondholders—and therefore binding upon all the bondholders of that series. If the state court suit brought the results that the two banks hoped for, the "accounting" action in the bankruptcy court against Manhattan would terminate because the state court judgment would be res judicata. And Brooklyn would then probably be able to find some former bondholder of the Eighth Series to sue it similarly in the state court, with a similar result.[30]

---

[27] As bearing on that allegation, it may be noted that Brooklyn concedes that the recovery, if any, for the Coffin estate, would be less than $500. To recover that sum, Brooklyn did the following: It filed an original and two amended complaints in the state court; on the hearing of the injunction petition, it filed elaborate affidavits and its counsel argued at length; on this appeal it has filed an expensive printed record of some 300 pages and printed briefs of more than 50 pages; its counsel argued orally at length in this court. Obviously the expenses incurred greatly exceed any possible recovery for the Coffin estate. We are therefore inclined to believe that, had testimony been offered by petitioner, the following remark made in appellee's brief would have been proved to be true: "Brooklyn individually and not as trustee of the Coffin estate, is bearing the expense of the state action." Cf. cases cited in note 9 supra.

[28] And pressed by Brooklyn on this appeal.

[29] The following time-table is of interest: Certiorari in the Manufacturers Trust case was denied on June 1, 1942. The next day, Brooklyn dismissed its appeal in that case. On June 18, the special master set June 25 for the hearing in the federal action against Manhattan. On June 22, Manhattan's counsel procured an adjournment of the hearing to July 2, without disclosing that the state court suit was about to be begun. On June 24, Brooklyn served on Manhattan the original complaint in the state court action. It was not served on the other defendants. On June 29, the first amended complaint was served on the new company as defendant. Subsequently Manhattan moved to dismiss and then, by stipulation, agreed to a second amended complaint served on it on July 7; on the same day Manhattan moved to dismiss this complaint. No complaint was ever served on the bondholder defendants.

[30] Brooklyn would also doubtless urge that the state court decisions in the suit against Manhattan would require the district court to disregard an earlier decision because of Erie v. Tompkins; so that, in that way, too, Brooklyn would be relieved of its liability. That it might do so is not the basis of our decision. However, we may note in passing that it is by no means clear that a state court ruling obtained in such circumstances would be binding on us under Erie v. Tompkins. The facts in Freuler v. Helvering, 291 U.S. 35, 54 S. Ct. 308, 78 L.Ed. 634, and Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L. Ed. 465, were substantially different.

Here, then, we have a case closely resembling Steelman v. All Continent Co., 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085. To be sure, in the Steelman case, there was reason to believe that the enjoined suit was in aid of a fraudulent conspiracy of a bankrupt to withhold his assets from his creditors, but that was not, we believe, the pivotal fact; the crucial fact in the Steelman case was that the enjoined suit was so contrived that there was, as the court said,[31] "danger that the issues to be tried may be so narrowly restricted as to shut out the light," danger "of frustration" of the bankruptcy court's duty to administer the estate and distribute the assets by "a decision which will breed confusion and uncertainty." The Supreme Court noted that "suits can be enjoined when they have a tendency to embarrass administration * * *" and this even when the "res to be affected" has "not come within the actual or constructive possession of the court of bankruptcy"; in such circumstances, injunction is proper "upon the ground that the suitor is misusing" the "jurisdiction" of the other court. Here the facts are stronger than in the Steelman case, for there no suit had as yet been begun on behalf of the estate in bankruptcy when the bankruptcy court issued its injunction, while here, as we have seen, when the bankruptcy court restrained the state court suit, it had "possession" of the res.

In the suit brought by Brooklyn, the issues are misleadingly narrowed and artificially presented; the true issues, we conclude, cannot be adequately determined in such a suit begun in the circumstances and for the purposes above narrated.

It is to be noted that the injunction is not permanent; it merely restrains the parties from prosecuting or defending the state court action until the actions in the federal court against the old trustees have been finally determined.[32]

12. We have indicated that where, as here, a federal suit relates to the restoration of the corpus of a trust res, it is no abuse of discretion of the federal judge to refuse to direct, even when requested so to do, the bringing of a state court suit adequately contrived to ascertain the rulings of the state court on questions of state law. But even if, in a proper case, a refusal to comply with such a request might be an abuse of discretion, this is not such a case, for no one here has ever made such a request. And even if such a request had been made, we would not be prepared to hold that here the judge would have committed error in refusing it, having in mind the following: There is the fact of the complicated background with which the judge was familiar through his previous decisions, and those of this court, relating to the estate and to those trusts.[33] There is the further fact that the old trustee, by their petitions, expressly invited adjudication of their liabilities in the bankruptcy court proceeding. There is also the fact that the Supreme Court denied certiorari in the Manufacturers Trust case; while, ordinarily, such a fact is not to be accorded too much weight, it may be said to have unusual force here, for the petition for certiorari urged the Supreme Court to grant the writ on the ground that the matter of jurisdiction should be promptly passed upon by the Supreme Court so that, if jurisdiction were lacking, there would be avoided lengthy, complicated and expensive accountings, and on the further ground that numerous practical future problems would be settled, including "the effect of efforts to stay proceedings in the state courts."

In that petition it was said that, if the decisions of this court were not reversed, there would be "no protection" to the old corporate trustees "against claims which may be made by those who held the bonds at the time of the alleged breaches of trust, who are not before the court and who

---

[31] 301 U.S. 278, 285, 291, 57 S.Ct. 705, 81 L.Ed. 1085.

[32] Cf. Looney v. Eastern Texas R. Co., 247 U.S. 214, 38 S.Ct. 460, 62 L.Ed. 1084. That case is discussed in Toucey v. N. Y. Life Ins. Co., 314 U.S. 118, 139, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967, as if it still had full vitality.

[33] In Alexander v. Hillman, supra, where the facts were not dissimilar, the Supreme Court reversed the Court of Appeals which had directed the institution

of a plenary suit; it held that the action should continue in the federal equity receivership proceeding because, to take the other course "would introduce additional elements of uncertainty and would involve unnecessary delay, work and expense."

It is perhaps pertinent here that the actions in the bankruptcy proceeding against several of the other old trustees have been settled with the result that, in toto, more than $1,000,000 has been restored to the trust funds.

120

will not be bound by the judgment." In similar vein, Manhattan argued in the court below against the injunction order[34] that a judgment in the federal action against it would not relieve it from an action by and judgment in favor of the Coffin estate which was not a party to the federal action. But if that fear were real, Manhattan, under § 2(6) of the Bankruptcy Act 11 U.S.C.A. § 11(6) and Rule 22, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, would now try to procure an order interpleading Brooklyn, as trustee for that estate, in the federal action.[35] It is of interest that Brooklyn, in its brief here, says that the federal court "is not called upon to protect the Manhattan Company from a double recovery * * *"; doubtless, however, the district court, if Manhattan so desires, will do all it can to prevent such a result.[36]

The order of the District Court is affirmed.

---

[34] Manhattan has not appealed from the injunction order. Although made an appellee, it has filed no brief in this court on this appeal.

[35] And it could do the same as to other similar claimants if and when, in the future, they bob up, for the bankruptcy court probably can, if requested, retain jurisdiction for that purpose.

In Manhattan's petition for adjudication of its accounts, filed in September 1938, it asked an injunction against "all persons, firms, or corporations from instituting * * * any action" against it as old trustee. It has never pressed for an order as extensive as that prayer.

[36] It may be that, if Manhattan does not request such an order, the new company will do so.